IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  23-cv-03171-NYW-NRN

COLORADO PROPERTY OWNERS FOR PROPERTY
RIGHTS, a Colorado Nonprofit Corporation,

    Plaintiff(s),

v.

TOWN OF BRECKENRIDGE, COLORADO,
A Home Rule Municipal Corporation.

    Defendant(s).

_____

## MOTION TO DISMISS
_____

Defendant Town of Breckenridge, Colorado (the "Town,") through its undersigned counsel, Josh A. Marks and Geoffrey C. Klingsporn of BERG HILL GREENLEAF RUSCITTI LLP, and pursuant to F.R.C.P. 12(b)(6), seeks dismissal of Plaintiff Colorado Property Owners for Property Rights' Complaint [Doc. 5] as follows:[1]

### I.    INTRODUCTION AND BACKGROUND

By Plaintiff's own account, the Town of Breckenridge's "regulations and restrictions on [short-term rental ("STR")] licenses" resulted from a lengthy and comprehensive legislative process. [Doc. 5 at 2.] Although the ordinances challenged here were first adopted in 2021, Plaintiff concedes that "Town STR ordinances have historically required

---

[1] **Certificate of Conferral**:  As required under this Court's Civ. Practice Standard 7.1B, undersigned counsel certifies they conferred with counsel for Plaintiff regarding this Motion; Plaintiff opposes the requested relief.

property owners wishing to operate a STR obtain a license and abide by certain other requirements of the Town code." [*Id*. at ¶ 33.]

In 2021, "'Ordinance 29' restricted the number of STR Licenses in the Town of Breckenridge to 2,200." [*Id*. at ¶ 36.] This limitation was justified, as Plaintiff acknowledges, by 20 separate legislative findings, some with multiple subparts. [*Id*. at ¶ 46; *see* Ordinance 29 (2021), attached hereto as Exhibit 1.][2] Those findings identified negative impacts from STRs including a reduction in the availability of workforce housing; negative changes in the character of the Town; and problems with the operation of some STRs including noise, parking, and trash complaints. [Doc. 5 at ¶ 47; Ex. 1 at ¶ Q(1)-(4).] Ordinance 29's cap on the number of available STR licenses was "adopted specifically to serve the public interest by addressing" these identified problems. [Ex. 1 at ¶¶ S, T.]

Subsequently, the Town Council formed a Tourism Overlay District Task Force "comprised of members of the public … including property management, real estate … exempt properties [*i.e.* hotels and resorts], at-large citizens, and representatives from council and planning commission." [Ordinance 28 (2022), attached hereto as Exhibit 2, at 1; Doc. 5 at ¶ 54.] The Task Force met at least six times between November 2021 and February 2022, considered which areas would be most appropriate for concentrations of STR licenses, and delivered recommendations to the Town Council. [Doc. 5 at ¶¶ 73-75; Ex. 2 at 1.] The Town Council debated those recommendations at six meetings and two

---

[2] The Court may consider the text of the Ordinances in ruling on this motion to dismiss because Plaintiff's Complaint repeatedly refers to and relies upon the Ordinances, and the Ordinances are a matter of public record subject to judicial notice. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

2

public hearings between April and August 2022. [Ex. 2 at 1.] The ultimate result was the adoption of Ordinance 28, which distributed the 2,200 STR licenses across three zones, concentrating most STR licenses in a "Tourism Zone," with a fourth "Resort Zone" exempt from the cap on licenses. [Doc. 5 at ¶ 85; Ex. 2 at 7, § 4-6-5(B)(1)-(4).][3] Ordinance 28 became effective on September 27, 2022. [Doc. 5 at ¶ 80.]

Plaintiff Colorado Property Owners for Property Rights is a non-profit purportedly with a membership of property owners who rent or desire to rent STRs in Breckenridge, and are subject to Ordinance 29 (2021) and Ordinance 28 (2022) (hereafter, the "STR Ordinances"). It brings a facial challenge to the lawfulness of the STR Ordinances, asserting five counts for declaratory and injunctive relief under federal and state law. Plaintiff's Second, Third, Fourth, and Fifth Claims assert violations under the substantive component of the Due Process Clause, the Equal Protection Clause, and the dormant Commerce Clause.

The STR Ordinances are a valid exercise of the Town's police powers and easily satisfy rational basis review. The Court should accordingly dismiss Plaintiff's federal claims under F.R.C.P. 12(b)(6) and decline supplemental jurisdiction over the remaining state law claim.

## II.     STANDARD OF REVIEW

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss,

---

[3] The Town maintains an interactive map showing the STR Zones at: https://www.townofbreckenridge.com/your-government/short-term-rentals/short-term-rentals-interactive-zoning-map

3

a complaint must contain sufficient factual allegations, accepted as true and interpreted in the light most favorable to the non-moving party, to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is not plausible on its face "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

In assessing a claim's plausibility, legal conclusions contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The complaint must allege sufficient facts to establish all the elements of each theory of relief; a claim may be dismissed if it asserts a legal theory not cognizable as a matter of law. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007); *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004).

## III.   ARGUMENT

### A.   Equal Protection (Fourth Claim for Relief)

Plaintiff's Fourth Claim for Relief asserts violations of the Fourteenth Amendment's guarantee of equal protection. [Doc. 5 at ¶¶ 140-155.] The essence of equal protection "is that the state treat all those similarly situated similarly, with its central purpose being the prevention of official conduct discriminating on the basis of race or other suspect classifications. As such, equal protection only applies when the state treats two groups, or individuals, differently." *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004) (alterations, internal quotations, citations omitted).

4

To analyze an equal protection claim challenging legislative action, "courts begin by determining the proper level of scrutiny to apply … [and] first ask whether the government action implicates a fundamental right." *Valdez v. Grisham*, No. 21-2105, 2022 WL 2129071, at *4 (10th Cir. June 14, 2022). Courts "apply strict scrutiny to a government action that targets a suspect class or involves a fundamental right." *Id.* (quoting *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002) (internal quotation and alterations omitted). Otherwise, courts apply rational-basis review. *Id.* A fundamental right or liberty interest is one that is "deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty." *Seegmiller v. LaVerkin City,* 528 F.3d 762, 757 (10th Cir. 2008).

Plaintiff does not allege that it is part of any protected class. Nor could it. *Abshire v. Newsom*, No. 2:21-cv-00198-JAM-KJN, 2021 WL 3418678, at *6 (E.D. Cal. Aug. 5, 2021), *aff'd*, No. 21-16442, 2023 WL 3243999 (9th Cir. May 4, 2023) ("Nor are the owners of hotels, lodgings, short-term rentals, and restaurants a suspect class."). Indeed, "federal courts have concluded uniformly that the right to dispose of one's property is not fundamental for equal protection purposes." *211 Eighth, LLC v. Town of Carbondale*, 922 F. Supp. 2d 1174, 1180 (D. Colo. 2013) (collecting cases). *See Selvaggi v. Borough of Point Pleasant Beach*, No. CV 22-00708 (FLW), 2022 WL 1664623, at *5 (D.N.J. May 25, 2022) ("the unilateral and unconditional 'right to use property,' such as the right to rent a property, is not supported by case law. A nationwide survey demonstrates that there is no such fundamental right.") (collecting cases); *Mogan v. City of Chicago*, No. 21 C 1846, 2022 WL 159732, at *16 (N.D. Ill. Jan. 18, 2022) ("[Plaintiff]'s ability to rent the Unit on

5

home sharing websites is not a fundamental right."). The Tenth Circuit has similarly suggested that governmental limitations on the use of property do not implicate a fundamental right. *Lehman v. City of Louisville*, 967 F.2d 1474, 1476 n.2 (10th Cir. 1992) (noting that the property interest to a proposed use of property bore "little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution.") (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring)).

Thus, rational-basis review applies. "When a regulation does not impinge upon a 'fundamental right,' the state need only articulate a rational basis for the exercise of police power." *Dodger's Bar & Grill, Inc. v. Johnson Cnty. Bd. of Cnty. Comm'rs* (citing *Bowers v. Hardwick,* 478 U.S. 186, 196 (1986). Under this standard, "[s]ocial and economic legislation is presumed to be rational and this presumption 'can only be overcome by a clear showing of arbitrariness and irrationality.'" *Coal. for Equal Rts., Inc. v. Owens*, 458 F. Supp. 2d 1251, 1258 (D. Colo. 2006), *aff'd sub nom. Coal. for Equal Rts., Inc. v. Ritter*, 517 F.3d 1195 (10th Cir. 2008) (quoting *Hodel v. Indiana,* 452 U.S. 314, 331-32 (1981)).

Importantly, "when legislative judgment is called into question on equal protection grounds and the issue is debatable, the decision of the legislature must be upheld if any state of facts either known or which could reasonably be assumed affords support for it. Second-guessing by a court is not allowed." *Powers*, 379 F.3d at 1216-17 (quotation omitted). Rational basis review does not give courts the option to speculate whether a different regulatory scheme could have better regulated the evils in question or strike down a law simply because it may not succeed in the result in seeks to address, or its

6

classifications lack precision or are not based upon sound empirical data. *Id.*

The STR Ordinances satisfy rational-basis review. Plaintiff alleges in conclusory fashion that "[t]he differential treatment of Plaintiff's members is not related to any legitimate governmental interest" (Doc. 5 at ¶ 153), but that is incorrect as a matter of law. As one court summarized over three decades ago:

> …the highest courts of this state and of the land [have] recognized that maintenance of the character of residential neighborhoods is a proper purpose of zoning… It stands to reason that the "residential character" of a neighborhood is threatened when a significant number of homes… are occupied not by permanent residents but by a stream of tenants staying a weekend, a week, or even 29 days. Whether or not transient rentals have the other "unmitigatable, adverse impacts" cited by the Council, such rentals undoubtedly affect the essential character of a neighborhood and the stability of a community. Short-term tenants have little interest in public agencies or in the welfare of the citizenry. They do not participate in local government, coach little league, or join the hospital guild. They do not lead a Scout troop, volunteer at the library, or keep an eye on an elderly neighbor. Literally, they are here today and gone tomorrow—without engaging in the sort of activities that weld and strengthen a community.

*Ewing v. City of Carmel-By-The-Sea*, 234 Cal. App. 3d 1579, 1590–91 (Ct. App. 1991); *see Short Term Rental All. of San Diego v. City of San Diego*, No. 22-cv-1831-L-BGS, 2023 WL 3964059, at *12 (S.D. Cal. June 12, 2023) ("the stated purposes of the Ordinance, preservation of existing housing inventory and quality of neighborhood life, are legitimate government purposes."); *Short Term Rental Owners Ass'n of Georgia, Inc. v. Cooper*, 515 F. Supp. 3d 1331, 1347 (N.D. Ga. 2021), *aff'd sub nom. Heyman v. Cooper*, 31 F.4th 1315 (11th Cir. 2022) ("as the Eleventh Circuit and other federal courts interpreting similar ordinances have held, the Short-term Rental Ordinance is a rational and reasonable means to accomplish enhancing and maintaining the residential character of the community by cutting down on traffic and protecting surrounding property

7

values.").

While Plaintiff repeatedly alleges that the STR Ordinances "are arbitrary and irrational," (Doc. 5 at 3; *id*. at ¶¶ 117, 120, 121, 129, 134, 138), its factual allegations undercut that conclusion (which is, in any event, not entitled to the presumption of truth). Plaintiff concedes that the Town took public comment, held public hearings, engaged in factfinding, and based new regulations on that process. [*See generally id*. at ¶¶ 39-87.] Further, the legislative findings regarding complaints over STRs in neighborhood areas, changes to the character of the Town, and the loss of long-term housing stock provide a rational basis for distinguishing between neighborhood areas and the tourist-oriented areas around the ski resorts of the Town, and creating more restrictions for STRs in neighborhood areas. [Ex. 2 at 1 (7th finding).] Limiting STR licenses in the neighborhood areas reasonably targets areas that are the most conducive to long-term housing and rentals that can serve the Town's local workforce while at the same time encouraging STR concentrations close to resort areas (and attendant tourist infrastructure like ski lifts and public transportation).

Plaintiff relies heavily on allegations that in drawing these classifications the Town relied on inaccurate data or assumptions, that it "did not commission an independent study … [or] hire an independent consultant," and that the STR Ordinances will not be effective at meeting their stated goals. [Doc. 5 at ¶¶ 50-52, 60-61, 76, 79, 83, 87.] But it is a well-settled principle that local governments "are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with *substantially less than mathematical exactitude*…. In short, the

judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (emphasis added); *Jennings v. City of Stillwater*, 383 F.3d 1199, 1211 (10th Cir. 2004) (refusing to treat "the federal courts as general-purpose second-guessers of the reasonableness of broad areas of state and local decisionmaking: a role that is both ill-suited to the federal courts and offensive to state and local autonomy in our federal system.").

On the contrary, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993). To state its claim, Plaintiff "must negative any reasonably conceivable state of facts that could provide a rational basis for the classification." *Streetmedia Group, LLC v. Stockinger*, 79 F.4th 1243, 1255 (10th Cir. 2023) (quoting *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 367 (2001) (internal quotation marks omitted)). And "[i]f the relationship is at least fairly debatable, the Ordinance must be upheld … the Court need not determine whether the same government purpose can be better served by other means." *Short Term Rental All. of San Diego*, 2023 WL 3964059, at *12 (cleaned up).

The Town's STR Ordinances and their accompanying restrictions are rationally related to the legitimate goals of preserving neighborhood life and local housing. *See Nekrilov v. City of Jersey City*, 45 F.4th 662, 681 (3d Cir. 2022) (upholding STR regulations under rational basis review where "the face of the ordinance articulates the very state interests that the ordinance furthers.") As a matter of law, the allegations in the

Complaint cannot meet Plaintiff's burden to plausibly allege and establish that the STR Ordinances have no conceivable rational basis. As a result, the equal protection claim must be dismissed.

B. <u>Substantive Due Process (Second and Third Claims for Relief)</u>

Although substantive due process and equal protection are distinct doctrines, the "substantive analyses" of the two often "converge." *Powers*, 379 F.3d at 1215. As with equal protection, the Fourteenth Amendment's due process clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg,* 521 U.S. 702, 719 (1997). The substantive due process standards under the United States and Colorado Constitutions are identical. *People v. Smith*, 848 P.2d 365, 368–69 (Colo. 1993). "Absent the presence of a fundamental constitutional right, legislation that bears a rational relationship to a legitimate governmental interest will survive challenges based on the substantive due process clauses of the United States and Colorado Constitutions." *People v. Zinn,* 843 P.2d 1351, 1353 (Colo. 1993).[4]

As discussed above, Plaintiff cannot establish a fundamental right that would require strict scrutiny review. To decide if a right is fundamental for Fourteenth Amendment purposes, "the Court has long asked whether the right is 'deeply rooted in

---

[4] Plaintiff's Second Claim for Relief (but not the Third) invokes Article II, Section 25 of the Colorado Constitution. Whether Plaintiff relies on the substantive due process protections of the United States or Colorado Constitutions, or both, the analysis is identical in this context. *Smith*, 848 P.2d at 368–69; *Zinn*, 843 P.2d at 1343.

[our] history and tradition' and whether it is essential to our Nation's 'scheme of ordered liberty.'" *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2246 (2022) (quoting *Timbs v. Indiana*, 139 S. Ct. 682, 686 (2019)). A plaintiff must provide "a 'careful description' of the asserted fundamental liberty interest;" "vague generalities ... will not suffice." *Chavez v. Martinez*, 538 U.S. 760, 775–76 (2003). The complaint here does not offer a sufficiently "careful description" of the fundamental liberty interests Plaintiff alleges have been violated. Nor does Plaintiff describe how its members' desire for short-term rental licenses is analogous to rights recognized as fundamental, such as the rights to marry or to privacy and contraception. Absent a fundamental right, only rational basis review applies.

The "rationality review for due process challenges is the same as that for equal protection challenges." *Coal. for Equal Rts.*, 458 F. Supp. 2d at 1263 (citing *Allright Colorado, Inc. v. City & Cnty. of Denver,* 937 F.2d 1502, 1511–1512 (10th Cir. 1991) ("Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them.") (internal citations omitted). Plaintiff makes no allegations (nor could it) that the challenged regulations are totally unrelated to the Town's stated goals. Instead, it alleges only its conclusion that "there is no rational relationship between the arbitrary and predetermined cap … and it's [*sic*] stated purpose of providing sufficient local long term employee housing, or that the cap number will improve the character of the town." [Doc. 5 at ¶ 120; *see id* at ¶¶ 130, 137.]

This does not suffice: courts "will not strike down a law as irrational simply because

11

it may not succeed in bringing about the result it seeks to accomplish, or because the statute's classifications lack razor-sharp precision,… [or] on the basis that no empirical evidence supports the assumptions underlying the legislative choice." *Powers*, 379 F.3d at 1217. Moreover, capping the number of licensed STRs in neighborhood zones provides some reasonable, yet flexible limitation on STRs that can be reasonably enforced by Town staff. That limitation on STR use is a reasonably conceivable method of lessening the negative impacts associated with STR use in neighborhoods.

In short, "[s]ubstantive due process is not a blanket protection against unjustifiable interferences with property." *Gen. Auto Serv. Station v. City of Chicago,* 526 F.3d 991, 1000 (7th Cir. 2008) (internal citations and quotations omitted). For the same reasons that Plaintiff's equal protection claim fails to overcome a rational basis review, so does its substantive due process challenges proceeding under the same analysis. *Powers*, 379 F.3d at 1215. Plaintiff cannot plausibly state any violation of substantive due process, and those claims should be dismissed.

**C.       Dormant Commerce Clause (Fifth Claim for Relief)**

Plaintiff's Fifth Claim for Relief alleges that the STR Ordinances violate the dormant commerce clause because "STRs are very commonly rented by out-of-state visitors," while "[l]ong-term rentals are primarily rented by Colorado residents." [Doc. 5 at ¶¶ 158-159.] Even if these conclusory allegations are taken as true, Plaintiff cannot state a claim for a dormant commerce clause violation here, where the STR Ordinances do not distinguish between in- and out-of-state property owners.

The "dormant Commerce Clause" limits state legislation which adversely affects

12

interstate commerce. *See Hughes v. Oklahoma*, 441 U.S. 322, 326 (1979). The focus of a dormant Commerce Clause challenge is whether a state law improperly interferes with interstate commerce. *Direct Mktg. Ass'n v. Brohl*, 814 F.3d 1129, 1135 (10th Cir. 2016); *see W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 192 (1994) ("This negative aspect of the Commerce Clause prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.") (internal citations omitted). Facing such a challenge, ordinances that "regulate even-handedly to effectuate a legitimate local public interest ... will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2091 (2018) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970)); *see also Energy & Env't Legal Inst. v. Epel*, 793 F.3d 1169, 1171 (10th Cir. 2015) (observing that "[b]y any reckoning, that's a pretty grand, even 'ineffable,' all-things-considered sort of test, one requiring judges (to attempt) to compare wholly incommensurable goods for wholly different populations (measuring the burdens on out-of-staters against the benefits to in-staters).").

Here, the Court need not engage in any such balancing of interests because, contrary to Plaintiff's conclusory allegations, the STR Ordinances do not "discriminate against interstate commerce on their face, purpose, and in their effect." [Doc. 5 at ¶ 163.] Plaintiff does not point to any language on the face of either Ordinance that treats out-of-state property owners or renters any differently than in-state owners or renters. The caps for STRs apply equally to Colorado and non-Colorado home and condominium owners. Nor does the Complaint identify anything in the Ordinances or even their legislative history

13

suggesting a "purpose" to discriminate against out-of-state property owners. Nor does it allege any circumstance, whether historical or hypothetical, in which an out-of-state property owner or STR licensee has been or could be affected differently from their in-state counterpart. Plaintiff has failed to support its dormant Commerce Clause claim with any allegations of fact, and that claim fails as a matter of law.

### D.     Preemption under Colorado Law (First Claim for Relief)

As discussed above, all of Plaintiff's federal law claims—over which this Court has original subject-matter jurisdiction pursuant to 28 U.S.C. § 1331—are subject to dismissal. Plaintiff's remaining claim is brought under state law, which implicates this Court's supplemental subject-matter jurisdiction under 28 U.S.C. § 1367. Under 28 U.S.C. § 1367(c)(3), when all the "federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998). Accordingly, this Court should dismiss the remaining state-law claim (Plaintiff's first claim for relief) without prejudice for lack of subject-matter jurisdiction and remand this claim back to state court.

WHEREFORE, as set forth above, the Town respectfully requests the Court to enter an order dismissing all the Plaintiff's claims against it.

Respectfully submitted this 13th day of December 2023.

BERG HILL GREENLEAF RUSCITTI LLP

*s/ Geoffrey C. Klingsporn*

Josh A. Marks
Geoffrey C. Klingsporn

*Attorneys for Defendant
Town of Breckenridge, Colorado*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 13th day of December 2023, a true and correct copy of the foregoing **MOTION TO DISMISS** was served electronically to the following:

| | |
|---|---|
| Ryan P. Horace<br>Jordan C. May<br>Frascona Joiner Goodman<br>   & Greenstein PC<br>4750 Table Mesa Drive<br>Boulder, CO 80305 | Timothy J. Knapp<br>Knapp & Associates, P.C.<br>11747 W. 54th Pl.<br>Arvada, CO 80002 |

*s/ Anne Choquette*

Anne Choquette