ORDINANCE NO. 28

Series 2022

**AN ORDINANCE AMENDING THE ACCOMMODATION UNIT LICENSE REGULATIONS TO ESTABLISH MAPPED AREAS BASED ON THE UNDERLYING LAND USE CHARACTERISTICS OF THE TOWN AND IN CONNECTION THEREWITH SETTING LIMITS ON THE CONCENTRATION OF LICENSES BY MAPPED AREA AND ESTABLISHING FINES.**

WHEREAS, the Town recognizes a permanent, year round population plays an important role in sustaining a healthy, viable community and the availability of long term residential areas and rentals contribute to creating quality living and working conditions for the local workforce;

WHEREAS, due to a continued dramatic increase in the number of accommodation unit licenses issued by the Town, in September 2021, the Town Council adopted council bill no. 26, series 2021, that limited the number of non-exempt licenses to 2,200 that would be achieved through attrition caused by certain real property transfers;

WHEREAS, based on feedback from the community at the time of the adoption of council bill no. 26, series 2021, Town Council created a temporary task force comprised of members of the public from several sectors, including property management, real estate, short-term rental license exempt properties, at-large citizens, and representatives from council and planning commission;

WHEREAS, the task force met six times between November 2021 and February 2022 to consider separate areas that may be more or less appropriate for concentrations of licenses based on the underlying land use characteristics;

WHEREAS, the task force delivered a recommendation of a multi-zone mapped area approach by identifying the areas of the Town more suitable for higher concentrations of short term rental uses and impacts;

WHEREAS, Town Council debated the recommendations received from the task force and considered the underlying land use districts and debated these important policy issues at six meetings beginning April 26, 2022, and again on May 10, May 24, June 14, June 28, and July 12 of 2022; further, the Town Council held two public hearings on August 9 and August 23, 2022;

WHEREAS, relying on the underlying land use districts, Town Council established four mapped areas to determine reasonable concentration of licenses based on the character and function such as the tourism area where the "Desired Character and Function" as listed in the Land Use District (LUD) description uses phrase related to "bed base of the ski area", "within walking distance/close proximity to lifts", "support ski base facilities"; or residential uses of 15 Units Per Acre (UPA) or greater (as identified under LUD Acceptable Land Uses and Intensities); or allows for Lodging(as identified under LUD "Acceptable Land Uses and Densities); and must also be located: West of Main Street; and South of North French Street (the section that runs from Park Avenue east past Main Street);

WHEREAS, the Town Council further debated a downtown core that includes residential uses of 12 UPA or greater (as identified under LUD "Acceptable Land Uses and Intensities") and properties must be south of North French Street (from Park Avenue east past Main Street) and south of Wellington Road (for properties not located on Main Street);

1

**EXHIBIT 2**

WHEREAS, the Town Council desired to further identify a resort properties area that includes properties that provide substantial conference and amenities space valuable to the Town;

WHEREAS, based on the task force recommendations and the deliberations of Town Council, Town Council has determined that based on the unique and distinct characteristics of the Town land use districts and guidelines, and based on the health, safety and welfare of the community, that four separate and distinct mapped areas with different concentration of accommodation unit licenses is appropriate for the Town of Breckenridge.

NOW, THEREFORE, BE IT ORDAINED BY THE TOWN COUNCIL OF THE TOWN OF BRECKENRIDGE, COLORADO:

**Section 1.** That title 4 be amended by adding a new chapter 6, entitled "ACCOMMODATION UNIT REGULATIONS" (or more commonly referred to as "short term or vacation rental regulations")

CHAPTER 6

ACCOMMODATION UNIT REGULATIONS

(MORE COMMONLY KNOWN AS "SHORT TERM OR VACATION RENTALS")

**4-6-1 Definitions:**

ACCOMMODATION UNIT: A separate and distinct living unit including condominium, townhome, house, trailer, studio unit, condominium unit, or any such other similar unit which is rented to any person, who, for consideration, uses, possesses or has the right to use or possess such accommodation unit for a period of less than thirty (30) consecutive days, regardless of the number of days during a license year such unit is rented.

ADVERTISEMENT: A form of marketing communication that employs a non-personal message to promote the rental of an accommodation unit. This includes, but is not limited to, mailing, brochures, print, internet listing, e-mail publication, social media, other electronic means, or other means or methods regardless of the medium used.

AMENITY SPACE: Swimming pool(s), swimming pool decks, hot tubs, spas, saunas, steam rooms, fitness centers, sports courts, locker rooms, ski locker rooms, arcades, common patios, grilling areas, lounges, theaters, media rooms, playgrounds, activity rooms, and business centers.

BEDROOM: A bedroom must meet the criteria set forth in section 4-6-4 of this chapter.

CONFERENCE SPACE: Meeting rooms, ballrooms, and associated kitchens and service areas.

LAND USE DISTRICT MAP: Has the same meaning as set forth in section 9-1-5 of the development code.

LAND USE DISTRICT GUIDELINES: Has the same meaning as set forth in section 9-1-5 of the development code.

OCCUPANCY LIMIT: The maximum number of persons permitted to reside overnight in an accommodation unit.

**EXHIBIT 2**

RENTAL AGENT: A management company, rental agent, or other person employed or engaged by the licensee to advertise the accommodation unit for rent, or to remit any required tax to the town.

RESPONSIBLE AGENT: A management company, rental agent, or individual who is identified in writing to the Town as the person responsible for code complaints made about the accommodation unit licensee.

RESORT PROPERTY OR PROPERTIES: A multi-unit accommodation property or properties, with each unit having separate ownership, where guests have access to numerous onsite amenities similar to the operations of a resort hotel.

STUDIO: An accommodation unit which does not contain a bedroom.

TOTAL RESORT AREA:   The total combined amenity and conference space on property.

**4-6-2   License required:**

   A.   Application; Requirement to update.

   1.   Licensee shall be required to set forth in an application for an accommodation unit a list of any and all methods or locations of advertising of the accommodation unit for rent.

   2.   License shall be required to provide the name, address and telephone number of any current rental agent for the accommodation unit.

   3.   Licensee shall designate in writing a responsible agent and may designate an alternate responsible agent at the time of application.

   4.   Licensee shall notify the finance director in writing within thirty (30) days of any change in the information set forth in the initial application; provided, however, Licensee shall notify the finance director as soon as practicable in writing of any change in rental agent by including the name, address and telephone number of the licensee's replacement rental agent.

   B.   Issuance.

   1.   Prior to operating an accommodation unit under this chapter, a licensee must be eligible for, apply and receive a business and occupational license under title 4, chapter 1 of this code, have paid all taxes and fees required under title 4, and met all other requirements of this chapter.

   2.   An accommodation unit license issued pursuant to this chapter shall be valid until abandoned, voluntarily surrendered, not renewed, revoked by the finance director or due to a transfer of title to the real property.

**4-6-3   Annual accommodation unit regulatory fee:**

   A.   Legislative Intent and Findings:

   1.   It is the purpose of this section to protect the public health, safety, and welfare by establishing a comprehensive accommodation unit regulatory scheme that will strike an equitable balance between the short-term rental industry and the local community.

   2.   The regulatory fee will benefit accommodation unit licensees by supporting housing policies and programs for the local workforce that supports industries that create the world class resort experience.

**EXHIBIT 2**

3. The regulatory fee will help address the secondary impacts caused by the short-term rental industry by protecting the character of the local community and town neighborhoods where accommodation units are located.

4. To ensure that the amount of the fee bears a reasonable relationship to the direct and indirect costs of implementing the town's comprehensive regulatory program established by this chapter, the administration retained an expert consulting firm to conduct a fee study and establish the reasonable amount of the fee.

5. The fee established by this section is not designed to raise revenues to defray the general expenses of town government, but rather is a charge imposed for the purpose of defraying some of the costs of the particular town services and programs described in subsection D of this section.

6. Consistent with *Colorado Union of Taxpayers Foundation v. City of Aspen*, 418 P.3d 506 (2018), that a charge is not a tax if the primary purpose of the charge is not to raise revenue for general governmental purposes but is instead to defray some of the costs of regulating an activity under a comprehensive regulatory scheme, the fee imposed by the town under this section is collected from the short term rental licensees for the primary purpose of defraying the costs of housing policies and programs for the local workforce essential to the tourism economy that benefits the short term rental licensees.

B. Establishment of Accommodation Unit Regulatory Fee:

1. Commencing with licenses for accommodation units issued on or after January 1, 2022, licensing period there shall be added to each accommodation unit license issued by the finance director pursuant to this chapter, and there shall be paid by the licensee of such license, an annual accommodation unit fee. The amount of the annual accommodation unit fee for 2022 shall be four hundred dollars ($400.00) per studio and/or per bedroom in any accommodation unit; provided, however, the regulatory fee established in this section shall not be imposed where the accommodation unit is the applicant's primary residence and is rented out for a period of time not to exceed twenty one (21) days out of the year.

2. Beginning with the town's 2023 fiscal year, the amount of the accommodation unit fee described in this section shall be fixed by the town council as part of its annual budget process in an amount not to exceed seven hundred fifty six dollars ($756.00) per studio and/or per bedroom in an accommodation unit. Annually at the time of the budget process, the director shall submit for review by council a report confirming that the fee amount from the prior year is adequately and reasonably covering the direct and indirect costs of the regulatory program. If, for any reason, the amount of such fee is not fixed by the town council as part of its annual budget process, the fee for the preceding year shall continue in full force and effect until changed by the town council.

3. No accommodation unit license shall be issued until the applicable accommodation unit fee has been received by the finance director.

C. Annual Fee; Due Date: The accommodation unit fee shall be due and payable to the town at the time of application. Failure to pay the fee in accordance with this section will result in the nonissuance or nonrenewal of a license.

D. Regulatory Fee Fund:

**EXHIBIT 2**

1. Administration of the Fund:

a. All sums of money collected by the town per this section are intended exclusively for use as outlined in subsection D(2) of this section.

b. The fee shall be administered by the finance director. The finance director is authorized to adopt administrative rules pursuant to title 1, chapter 18 of this Code to implement this chapter, prescribe forms and provide methods of payment and collection, and otherwise implement requirements of this chapter.

c. The fees collected in accordance with this section shall be accounted for by the finance director in such a manner that the finance director can separately track the collection and expenditure of such fees.

d. The fees collected in accordance with this section shall not be used for general municipal or governmental purposes or spending. Nor shall the fund ever be transferred to or become part of the town's general fund.

e. The finance director shall establish a method for separately accounting for all of the accommodation unit regulatory fees collected by the town pursuant to this section, and the expenditure of such fees.

2. Purpose and Use of the Regulatory Fees: Funds collected by the town from the accommodation unit fee established by this section shall be used to defray the reasonable direct and indirect costs of the following:

a. The town's housing policies and programs, including buy downs, lease to locals, acquisition of deed restricted units, and/or construction of new units;

b. To address the secondary impacts caused by the short term rental industry by protecting the character of the local community and town neighborhoods where accommodation units are located including but not limited to lack of parking, loud noise, and increased trash associated with the higher density use; and

c. To defray the costs to the town, including, but not limited to, for staff and personnel required for the administration and enforcement of the regulatory program.

**4-6-4   Criteria for a bedroom under the short-term rental regulations:**

A. The number of bedrooms in an accommodation unit shall be established by the Summit County Assessor database; or

B. In order to establish a different number of bedrooms than in the Summit County Assessor database, the Town shall conduct an inspection per 4-6-9, and determine the number of bedrooms that meet each of the following criteria:

1. At least 70 square feet in size, have a ceiling height of at least 5 feet, and shall not have a "through way" to another room of the accommodation unit or to the exterior; and shall contain each of the following:

2. Interior walls and door(s) on the same level of the building as the space in order to separate the space and provide privacy;

**EXHIBIT 2**

   3. An egress window as required by the town's building and technical code adopted by reference in chapter 1, title 8 of this code;

   4. Operable smoke and carbon monoxide detectors pursuant to Colorado law within 15 feet of any bedroom; and,

   5. A built-in closet consisting of dry wall, or built-in clothes storage area permanently affixed to the wall, requiring repairs to the accommodation unit if removed.  Built-in bunk beds with built-in clothes storage space complies with this requirement but the following are examples of things that do not constitute a closet in compliance with this section:

   a. Bunk bed with drawers purchased from a furniture store does not comply.

   b. An armoire.

**4-6-5   Creation of mapped areas; limitation on concentration of licenses:**

   A. Consistent with the Town's land use district map and guidelines, the Town hereby establishes four areas within the boundaries of the Town of Breckenridge as reflected in the attached maps, a copy of which is incorporated by reference in Exhibit A, and available for inspection in the office of the town clerk:

   1. A tourism zone ("zone 1);

   2. A downtown core zone ("zone 2");

   3. Areas not categorized as a resort property nor included in zone 1 or 2 fall within zone 3 ("zone 3"); and,

   4. Resort property zone.

   a. Resort properties in this zone shall be:

    1. A minimum of 15,000 square feet of total resort area that is located on the premises of the property; or

    2. A minimum of 7,000 square feet of total resort area located on the premises of the property provided the resort property has an entrance that is within 150 feet walking distance of a ski area lift terminal.

   b. Notwithstanding subsection a. above, the finance director or their designee may determine that a property constitutes a resort property under the following circumstances:

    1. Spaces that do not meet the precise definition of amenity or conference space as defined in section 4-6-1 are deemed appropriate as the equivalent thereof in order to be included in the minimum square foot calculations above in 4 a;

    2. Spaces for amenity or conference are deemed appropriate for inclusion in minimum square foot calculations above in 4 a as they are available to resort property guests on an adjacent property well connected to the main property.  Conversions of existing residential shall not be included in total resort area calculations.

   c. If a resort property is determined by the finance director as qualifying as a resort property, such property shall only be eligible for a license in the resort property zone and no other zone.

**EXHIBIT 2**

    d.    The mapped areas of Zones 1, 2 and 3 shall only be modified, amended or changed legislatively through an ordinance adopted by Town Council.  The map of the resort property zone may be amended administratively upon a determination that a property constitutes a resort property but such property shall not be issued an accommodation unit license until such time that is eligible to receive a business and occupational license under title 4, chapter 1 (i.e. renting an accommodation unit).

    B.    Except as otherwise provided in this chapter, the finance director shall not issue any accommodation unit license if doing so would result in there being in effect at any one time more than the maximum number of valid accommodation licenses in each of the zones as follows:

    1.    The resort property zone shall be comprised of the number of units available in the resort property zone as of the effective date of this ordinance and any additional licenses that are granted administratively in the event the finance director or their designee has made a determination that a future property meets the resort properties criteria and special requirements.

    2.    Zone 1 shall have no more than 1680 accommodation unit licenses.

    3.    Zone 2 shall have no more than 130 accommodation unit licenses.

    4.    Zone 3 shall have no more than 390 accommodation unit licenses.

    C.    Certain licensees/properties not affected.

    1.    A licensee that was issued an accommodation unit license prior to the effective date of this ordinance is not subject to the limitations set forth in 4-6-5 B and may renew unless or until the property title transfers to a new owner.

    2.    A person issued a building permit for a residential unit(s) on or before September 14, 2021 shall not be subject to the limitations set forth in 4-6-5 B provided such person has applied for an accommodation unit license within twenty (20) days from the date of issuance of a certificate of occupancy.

**4-6-6  Special requirements of resort properties:**

Resort property or properties shall provide:

    A.    Twenty four (24) hour onsite front desk that is monitored by a person onsite;

    B.    Twenty four (24) hour phone line that is monitored by a person onsite;

    C.    Twenty four (24) hour private security capable of responding to complaints within a reasonable amount of time. The person responsible for staffing the front desk and the security personnel cannot be the same staff member;

    D.    On-site housekeeping; and,

    E.    Enclosed garage parking.

    F.    The finance director or their designee may impose additional conditions requiring that resort properties provide shuttle service under terms and conditions of administrative regulations adopted under the authority of this code.  Notwithstanding the

**EXHIBIT 2**

effective date of this ordinance, Resort properties have until December 1, 2023 to meet this shuttle requirement.

**4-6-7   Wait list for new license applications:**

A.   On the effective date of this ordinance, the wait list that the Town instituted on November 2, 2021, shall be divided into four separate lists identified by mapped areas (i.e. the resort properties zone, zone 1, zone 2, and zone 3).

1.   A person whose name was put on the wait list beginning November 2, 2021, shall be prioritized on the list in the order in which they were placed on the initial list but categorized by zone on the effective date of this ordinance.

2.   New owners requesting to be added to the wait list as of the effective date of this ordinance shall be placed on the wait list in the order in which the request is received and categorized by zone.

B.   As new licenses become available in a zone, the owner at the top of the list in that zone will be contacted and has fourteen (14) business days to submit a completed application to the finance director.

C.   If such owner fails to submit a complete license application to the finance director within the fourteen (14) day period, or if such owner notifies the finance director that it declines to proceed with an application, the finance director shall promptly notify the next owner on the wait list and shall continue on the list until the available license is issued.

E.   Only the current property owners can request to be placed on the waitlist. If the property sells, the place on the wait list is void and the new buyer will have to complete a new wait list request after purchasing the property

**4-6-8   Licenses non-transferable:**

A.   Except as otherwise provided in this section, no license granted pursuant to this chapter shall be transferable from one person to another or from one location to another.

B.   Exceptions to non-transferable license.  If the real property for which a valid accommodation unit license has been issued is transferred pursuant to a deed meeting any of the following conditions, the Director may issue a new accommodation unit license to the grantee named in such deed:

1.   The transfer of title to real property when there is no consideration if the grantee is a member of the grantor's family.

2.   The transfer of title to real property from a grantor to a trust established by the grantor.

3.   The transfer of title to real property from a grantor to a limited liability company or another form of business entity recognized by Colorado law so long as the grantor has a controlling interest in such limited liability company or other business entity.

4.   Any transfer of the property between the same parties creating or terminating a joint tenancy in such property.

5.   The transfer of title or change of interest in real property by reason of death, pursuant to a will, the law of descent and distribution, or otherwise.

8

**EXHIBIT 2**

6.  The transfer of title to make effective any plan confirmed or ordered by a court of competent jurisdiction under the bankruptcy code or in an equity receivership proceeding.

7.  The transfer of title without consideration for the purpose of confirming, correcting, modifying, or supplementing a transfer previously recorded; making minor boundary adjustments; removing clouds of titles; or granting rights-of-way, easements, or licenses.

8.  The transfer of title pursuant to any decree or order of a court of record quieting, determining, or vesting title, including a final order awarding title pursuant to a condemnation proceeding.

9.  The transfer of title between spouses or former spouses made pursuant to a separation agreement, decree of legal separation, or dissolution of marriage.

C.  Temporary license for pending reservations.  Upon transfer of title, a subsequent owner may request a temporary license for no longer than six-months to allow such owner to honor reservations for the property that existed on the date of the transfer of legal title to the real property that was the subject of the previous license.

**4-6-9   Right of entry for inspections or investigations; complaints:**

A.  Inspections.

1.  Warrantless.

a.  A representative of the Town's finance department or community development, as the case may be, may enter such accommodation unit at all reasonable times to inspect the same for the purpose of enforcing health, safety, and welfare conditions.

b.  If such accommodation unit is occupied, the a Town inspector shall first present proper credentials and request entry, and if such accommodation unit is unoccupied, shall first make a reasonable effort to locate the owner, the local responsible agent, or other person having charge or control of the accommodation unit and request entry. If such entry is refused, or if the accommodation unit is locked, the Town inspector shall have recourse to every remedy provided by law to secure entry.

c.  Upon consent of an owner who has requested an inspection to determine the number of bedrooms as set forth in section 4-6-4.

3.  No inspection warrant or permission shall be required for the Town to enter and inspect an accommodation unit in the case of an emergency involving the potential loss of property or human life.

2.  Warrant inspections.

a. The Municipal Court Judge may issue an inspection warrant authorizing the inspection of an accommodation unit pursuant to this section in accordance with rule 241(b) of the Colorado Municipal Court Rules of Procedure.

b.  Any inspection warrant issued pursuant to this section shall fully comply with the applicable provisions of rule 241 of the Colorado Municipal Court Rules of Procedure.

c.  The Municipal Judge may impose such conditions on an inspection warrant as may be necessary in the judge's opinion to protect the private property rights of the owner of the

**EXHIBIT 2**

accommodation unit to be inspected, or to otherwise make the warrant comply with applicable law.

   d.   When a representative of the Town has obtained a proper inspection warrant or other remedy provided by law to secure entry, no owner, occupant, or any other persons having charge, care, or control of any accommodation unit shall fail or refuse, after proper request is made as herein provided, to promptly permit entry therein by the authorized public inspector for the purpose of inspection of the accommodation unit.

   B.   Complaints.

   1.   The responsible agent shall be available twenty four (24) hours per day, seven (7) days per week, to respond to any complaint filed with or through the town, or a website provided by the town for such purpose, about the operation or condition of the licensee's accommodation unit.

   2.   The responsible agent shall respond to a complaint within sixty (60) minutes of receiving notice of such complaint.

**4-6-10 Mitigation of health safety and secondary impacts:**

Accommodation unit licensees shall be responsible for the safety of the occupants and welfare of the surrounding areas and residential habitants.  In so doing, the licensee or the responsible agent shall:

   A.   Accommodation units shall at all times be equipped with a functioning smoke detector, carbon monoxide detector, and fire extinguisher.

   B.   Motor vehicles used by occupants shall be parked only on the site of the accommodation unit or in a Town designated parking area located off of the site of the accommodation unit.

   C.   Motor vehicles shall be parked without causing negative impacts to adjacent lawn or landscaped areas of an accommodation unit, or in the public street or right-of-way adjacent to the accommodation unit.

   D.   Occupants shall not sleep in motor vehicles and further, cause motor vehicles parked at an accommodation unit to comply with the requirements and be subject to the limitations of section 9-3-11 of this Code.

   E.   Trash and garbage from an accommodation unit shall be stored and disposed of in compliance with title 4, chapter 16 and title 5, chapter 6 of this Code.

   F.   Unreasonable noise shall not emanate from an accommodation unit or the real property upon which an accommodation unit is located. In determining whether a particular noise is unreasonable, the following factors will be considered: (i) the time of the day that the noise emanated from the accommodation unit; (ii) the location of the noise in relation to the location of the person who heard such noise; and (iii) all other relevant factors.

   G.   The occupancy limit for all accommodation units except studios shall be two (2) persons per bedroom plus four (4) additional persons. The occupancy limit for studio accommodation units shall be a total of four (4) persons.

**EXHIBIT 2**

### 4-6-11 Advertising requirements:

A.  An accommodation unit for rent shall only be advertised in a method or identified in writing to the finance director.

B.  An advertisement offering to rent an accommodation unit must prominently display:

1.  The town's business and occupational license number in the advertisement as, "Breckenridge Business License No. [insert number]"; and

2.  The occupancy limit for the accommodation unit as, "Maximum overnight occupancy [insert number]."

C.  The licensee and/or owner of an accommodation unit shall be given written notice of an advertising violation of this section and fifteen (15) days within which to comply with the requirements of this section.

### 4-6-12  Rules and regulations:

The finance director is authorized to adopt rules and regulations to implement the requirements of the short term rental regulations under this chapter 6 of title 4.

### 4-6-13 Fines, Penalties, Denial of License:

A.  In addition to citation for infractions or general penalties, the finance director may impose an administrative fine for failing to comply with this title 4 or any other ordinance, rule or regulation of this Town code.

1.  The amount of the fine imposed may be up to one-thousand (1000) dollars per day until the violation is cured.

2.  Written notice of an administrative penalty shall be provided by first class United States mail to such person at such person's last known address.

3.  The administrative fine shall be due and payable within fourteen (14) days of the date of the notice.

B.  A licensee may appeal the imposition of administrative fines and decisions to deny a license to the Town Manager or their designated hearing officer.

### 4-6-14 Disciplinary proceedings prior to suspension or revocation:

A.  In addition to any other penalties prescribed by the code, the finance director may, on his or her own motion or on complaint, and after investigation and a show-cause hearing conducted by the Town manager or a designated hearing officer at which the licensee shall be afforded an opportunity to be heard, suspend, revoke, or place conditions on any license for any of the following circumstances:

B.  The finance director shall provide the Licensee with a copy of an order to show cause. Such order shall include the basis of the complaint and notice of the date and time of a hearing at which the Licensee must show cause why its license should not be suspended or revoked.

### 4-6-15 Conduct and procedures at hearings:

A.  The licensee shall be allowed to be represented by counsel, the parties shall have the right to present evidence, and cross examine witnesses.  The burden of proof shall be on the Town to prove a violation by a preponderance of the evidence.

B.  The hearing officer shall make findings of fact for review by the Town manager.

**EXHIBIT 2**

  C. Upon receipt of the findings of fact, the Town manager shall make a final determination as to the sanctions to be imposed.

  D. In determining what sanction to impose, the Town shall consider: 1) the nature and seriousness of the violation; 2) corrective action, if any, taken by the licensee; 3) prior violation(s), if any, at the licensed premises by the licensee and the effectiveness of prior corrective action, if any; 4) the likelihood of recurrence; 5) all circumstances surrounding the violation; and 6) whether the violation was willful.

  E. The Town's manager's decision shall be delivered in writing to the licensee and shall be final, subject to the right of any aggrieved party to contest the matter in an appropriate court action commenced under rule 106(a)(4) of the Colorado rules of civil procedure.

  F. Stipulation in Lieu of Public Hearing.  A licensees subject to disciplinary proceedings or under review of an administrative decision may contact the Town Attorney to discuss allegations in the Complaint and in attempt to resolve the matter without a hearing; provided however, the licensee shall contact the Town attorney no later than fourteen (14) days prior to the scheduled hearing date.

**4-6-16  Review period; report required:**

  By February 1 of 2023, and annually thereafter, the finance director shall submit an annual report to the town council summarizing its activities for the preceding period.  The report shall include details available to the Town such as status of the waitlist, the number of licenses terminated voluntarily or for reasons under the code, the number of licenses added administratively, if any, and any recommendations for legislative amendments to this code.

  **Section 2.** Except as specifically amended hereby, the Breckenridge Town Code, and the various secondary codes adopted by reference therein, shall continue in full force and effect.

  **Section 3.** The Town Council hereby finds, determines and declares that this ordinance is necessary and proper to provide for the safety, preserve the health, promote the prosperity, and improve the order, comfort and convenience of the Town of Breckenridge and the inhabitants thereof.

  **Section 4.** This ordinance shall be published and become effective as provided by Section 5.9 of the Breckenridge Town Charter.

  INTRODUCED, READ ON FIRST READING, APPROVED AND ORDERED PUBLISHED IN FULL this 9th day of August, 2022.

This ordinance was published in full on the Town of Breckenridge website on August 12, August 13, August 14, August 15 and August 16, 2022.

A public hearing on this ordinance was held on August 23, 2022.

READ, ADOPTED ON SECOND READING AND ORDERED PUBLISHED IN FULL ON THE TOWN'S WEBSITE this 23rd day of August, 2022.  A copy of this Ordinance is available for inspection in the office of the Town Clerk.

**EXHIBIT 2**

| ATTEST: | TOWN OF BRECKENRIDGE |
|---|---|
| _____ | _____ |
| Helen Cospolich, CMC, Town Clerk | Eric S. Mamula, Mayor |

APPROVED IN FORM

_____  8·31·22
Town Attorney          Date

    This Ordinance was published on the Town of Breckenridge website on August 24, August 25, August 26, August 27 and August 28, 2022. This ordinance shall become effective on September 27, 2022.

13

**EXHIBIT 2**



**EXHIBIT 2**