IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO

**COLORADO PROPERTY OWNERS
FOR PROPERTY RIGHTS**, a Colorado
Nonprofit Corporation
      Plaintiff,                                           Civil Action No.: 2023CV3171-NYW-NRN
v.

**TOWN OF BRECKENRIDGE, COLORADO,**
A Home Rule Municipal Corporation
      Defendant.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

      Plaintiff Colorado Property Owners for Property Rights ("Plaintiff" or "COPR"), by and through undersigned counsel, submits this Response to Defendant's Motion to Dismiss as follows:

### INTRODUCTION

      Defendants would have this court believe that so long as a municipality's ordinance includes a public purpose and such municipality went through the window dressing process of a public hearing, then the legislative action is automatically valid and may not be legally challenged. Defendant's principal argument in its motion to dismiss is premised on this erroneous premise. The Town also inappropriately attempts to have this Court lock in a standard of review in the case now and not at trial or summary judgment, suggesting the Court apply the rational basis standard for review at this early stage. Plaintiff does not concede that the standard for review is a rational basis, rather, the correct standard for review of Due Process, Equal Protection and Dormant Commerce clause claims is intermediate scrutiny. However, for the sake of Defendant's motion to dismiss Plaintiff will show how its detailed allegations pass a rational basis test.

      Defendant's motion correctly cites caselaw stating a complaint must contain factual allegations, accepted as true and interpreted in the light most favorable to the nonmoving party.

1

Yet Defendant ignores this standard when challenging Plaintiff's constitutional claims by asserting facts of their own that are contrary to, or misrepresentations of the detailed factual allegations contained in Plaintiff's complaint. When the parties dispute material facts the court should not act as a factfinder and must construe all disputed facts in favor of the plaintiff. *Bar Group, LLC. v. Business Intelligence Advisors, Inc.*, 215 F. Supp. 3d 524 (S.D. Tex. 2017). Disputed material facts should not be resolved at the motion to dismiss stage. *Edmonson v. Lincoln Nat. Life Ins. Co.,* 777 F. Supp. 2d 869 (E.D. Pennsylvania 2011).

Dismissal under Rule 12(b)(6) "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (citing *Duran v. Carris*, 238 F. 3d 1268, 1270 (10th Cir. 2001). To survive a 12(b)(6) motion to dismiss the complaint does not need detailed factual allegations, rather, plaintiff's obligation is to provide the grounds of his entitlement to relief and something more than labels and conclusions. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). Plaintiff's complaint contains factual allegations that detail how the Town of Breckenridge's short-term rental ("STR") ordinances, which limit the number of STR licenses and further limits the number of licenses within arbitrarily drawn zones, are unsupported, irrational, arbitrary, and discriminatory under federal and state laws[1]. Examples of detailed factual allegations include Plaintiff's claim that Defendant arbitrarily set in-stone, a cap on the number of STR licenses before receiving staff input, void of any relevant statistical analysis, made without the recommendations of its Task Force and formal public input; Plaintiff's allegation regarding the

---

[1] On September 28, 2021, Town Council adopted Ordinance No. 29 with an effective date of November 2, 2021. ("Ordinance 29") In part, Ordinance 29 restricts the number of STR Licenses in the Town of Breckenridge to 2,200. On August 23, 2022, Town Council adopted Ordinance No. 28 with an effective date of September 27, 2022. Ordinance 28 districts the Town into 4 zones and sets STR caps within each zone. (Collectively, Ordinances 29 and 28 are referred to herein as the "Ordinances").

town council randomly selected of the number of licenses for each of the four STR zones and then during a public hearing, and without any rationale or support for doing so, arbitrarily shifted the number of licenses in each zone; Plaintiff's allegation that the Defendant adopted the STR ordinances in violation of prior development agreements; and how the Town's Community Development Manager, without Council's authorization, narrowed the Task Force's scope of work to no longer consider evaluating the number of STR licenses. This directive was made against the Mayor's earlier direction to the Task Force. As a result, town council received an incomplete and less than complete recommendation from its Task Force. Another example of a detailed factual allegation in Plaintiff's complaint is its demonstration of how the STR zones violate Plaintiff's Constitutional Equal Protection, Due Process and Dormant Commerce clause rights. Without naming specific members Plaintiff details that two of its members live side-by-side in the same subdivision, are similarly situated, yet one is in Zone 1 and the other Zone 3. This disparate treatment resulted in a radically different ability for one member to obtain a STR license and other unequal treatment. Plaintiff's complaint also details factual allegations substantiating how Defendant's STR Ordinances violate Colorado's statutory prohibition on rent control.

As earlier stated, Plaintiff disagrees with Defendant's position that the standard of review this court should apply is the rational basis standard. Instead, Plaintiff argues that the Defendant's legislative actions implicates an important individual right and the correct standard of review is intermediate scrutiny. *United States v. Coleman*, 166 F. 3d 428, 431 (2 Cir. 1999).

Plaintiff's complaint provides detailed factual allegations that state plausible claims for relief. For these reasons the Court should deny Defendant's motion to dismiss.

3

**STANDARD OF REVIEW**

**A. Standard of Review Applicable to F.R.C.P. 12(b)(6).**

"[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to plaintiff." *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).

"Under *Twombly*, the relevant question is whether, assuming allegations are true, the plaintiff has stated a ground for relief that is plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009). If the factual allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 680.

Dismissal under Rule 12(b)(6) "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (citing *Duran v. Carris,* 238 F.3d 1268, 1270 (10th Cir.2001)).

**B.  Standard of Review Applicable to Equal Protection and Due Process Claims.**

Plaintiff does not concede the standard of rational basis review in this case. There is no question Colorado highly values individual property rights and that such rights are deeply rooted in the state's history. Further, recognition of property rights as fundamental is enshrined in the state's constitution and recognized by its highest court. Colorado's Constitution affords property owners greater protections than those afforded by the U.S. Constitution.  *Pub. Serv. Co. of Colorado v. Van Wyk,* 27 P.3d 377, 388 (Colo. 2001).  "All persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; *of acquiring, possessing and protecting property*; and of seeking and obtaining

4

their safety and happiness." CO CONST Art. 2, § 3 (emphasis added). "No person shall be deprived of life, liberty or property, without due process of law." CO CONST Art. 2, § 25. By contrast, no court has conclusively determined that the rights to acquire, possess or protect property are not fundamental rights. If ultimately determined to be fundamental rights, the Ordinances would be subject to heighted scrutiny in the evaluation of both substantive due process and equal protection claims. Plaintiff does not concede that rational basis scrutiny is the appropriate standard in this case. However, for purposes of Defendant's motion to dismiss, Plaintiff can demonstrate that the Ordinances do not even withstand rational basis review.

Federal and state courts have held intermediate scrutiny is triggered when the challenged legislation employs some sort of quasi-suspect classification or *implicates an important right. United States v. Coleman*, 166 F. 3d 428 431 (2 Cir. 1999). Further, the U.S. Constitution provides protection for property owners when the government intervenes through regulations restricting an owner's rights in land or housing. 1 Edward H. Ziegler, Jr., Rathkopf's The Law of Zoning and Planning §6:2-3 (4th ed. 2010). The U.S. Constitutions' Fifth and Fourteenth Amendments' Due Process Clauses and Privileges or Immunities Clause protect an individual's property rights. Plaintiff argues that the adoption of the Town of Breckenridge's STR Ordinances significantly impinge on its members important Constitutional right to use their property. Plaintiff's complaint asserts that the Defendant's STR Ordinances violate its members' equal protection rights in that it requires some, but not all, such property owners to bear the public burden the Defendant claims exist. In *Dolan v. City of Tiggard,* 512 U.S. 374, 114 S. CT. 2309 (1994), the U.S. Supreme Court held that the Fifth Amendment is a bar of Government from forcing some people alone from bearing a public burden that in all fairness should be borne by the public as a whole. *Id.* @ 384. And in *Nollan v. California Coastal Commission,* 483 U.S. 825, 107 S. Ct. 3141 (1987), the U.S.

5

Supreme Court required a heightened examination to determine whether there was a nexus between the stated public interest and the agencies requirement for an easement. Even though the agency claimed the easement was for the promotion of a legitimate state interest the Court used heightened scrutiny to determine whether the public interest could be achieved by a less imposing requirement. *Id*., @ 387. As documented in caselaw and property law treatises, an individual's right in real property is an important right that demands a heightened analysis when a law impinges on that right.

### I. Colorado's Long-Standing Respect for Property Rights.

#### A. Municipal Rent Control is Prohibited.

"The general assembly finds and declares that the imposition of rent control on private residential housing units is a matter of statewide concern; therefore, no county or municipality may enact any ordinance or resolution that would control rent on either private residential property or a private residential housing unit." C.R.S. § 38-12-301. "Rent control statutes come in all types, shapes and sizes." *Town of Telluride v. Lot Thirty-Four Venture, L.L.C.,* 3 P.3d 30, 35 (Colo. 2000), *as modified on denial of reh'g* (Feb. 26, 2000) (internal quotation omitted). Although some ordinances have the laudable purpose of increasing affordable housing within the communities where lower income employees work, the prohibition in section 38–12–301 on rent control is unambiguous and complete, encompassing "any ordinance or resolution which would control rents." *Id.* "Rent control" is not a term of art, and the language of the statue is sufficiently broad to encompass any mandate that would *operate* to control rents. *Id.* The statute is clear on its face and legislative history need not be considered, including the historic conditions that triggered the General Assembly's decision to ban rent controls. *Id.* at 36.

#### B. Colorado's Unfair Practices Act.

Colorado's Unfair Practices Act provides, in relevant part:

6

> It is unlawful for any person, firm, or corporation doing business in the state of Colorado and engaged in the production, manufacture, distribution, or sale of any commodity, product, or service of general use or consumption, or the sale of any merchandise or product by any public utility, **with the intent to destroy the competition** of any regular established dealer in such commodity, product, or service, **or to prevent the competition** of any person, firm, private corporation, or municipal or other public corporation that in good faith intends and attempts to become a dealer, **to discriminate between different sections, communities, or cities, or portions thereof, or between different locations in such sections, communities, cities, or portions thereof in this state by selling or furnishing a commodity, product, or service at a lower rate in one section, community, or city, or any portion thereof**, or in one location in such section, community, or city, or any portion thereof than in another after making allowance for the difference, if any, in the grade or quality, quantity, and actual cost of transportation from the point of production, if a raw product or commodity, or from the point of manufacture, if a manufactured product or commodity.  C.R.S. § 6-2-103(1) (emphasis added).

"The inhibition in this section against locality discrimination shall embrace any scheme of special rebates, collateral contracts, or any device of any nature whereby such discrimination is, in substance or fact, effected in violation of the spirit and intent of this article." C.R.S. § 6-2-103(3).  "The Act is unambiguous; it is intended to apply whenever a business charges different prices to purchasers based on geographic differences with an intent to drive out competition in one geographic area.... A business needs only to discriminate in price based on geographic territories. Any other interpretation would strain the plain meaning and intent of the statute."  *Dunlap v. Colorado Springs Cablevision, Inc.,* 855 P.2d 6, 8 (Colo. App. 1992).

## ANALYSIS

Although substantive due process and equal protection are distinct constitutional doctrines, the substantive analyses of the two doctrines often converge. *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004).  However, the Equal Protection and Due Process clauses protect distinctly different interests.  *Id.*  The "substantive component" of the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests," even when the challenged regulation affects all persons equally; equal protection only applies when the state treats two groups, or individuals, differently.  *Id.* (internal quotations omitted).

7

I. **The Ordinances Violate Plaintiff's Right to Equal Protection.**

Equal Protection requires that governments, like the Town, to afford similar treatment to all persons who are similarly situated. *Mayo v. National Farmers Union Property and Cas. Co,* 833 P.2d 54, 57 (Colo. 1992). When a challenged statute does not affect a protected class or involve a fundamental right, it will be overturned only if it is not rationally related to a legitimate state interest. *Edwards v. Valdez,* 789 F.2d 1477, 1483 (10th Cir.1986). The test for rationality review in equal protection cases is the same under the Colorado Constitution. *Coal. for Equal Rights, Inc. v. Owens,* 458 F. Supp. 2d 1251, 1262 (D. Colo. 2006) (citing *People v. McKnight,* 200 Colo. 486 (1980)).

A. **The Ordinances Discriminate against Plaintiff's Members.**

The Ordinances seek to discriminate against similarly situated homeowners within the Town by rendering homeowners without a license in Zones 2 and 3 effectively unable to rent their homes to tourists and guests while permitting homeowners in Zone 1 to rent their homes to tourists on simple application and receipt of a STR license. By the Town's own estimates, some homeowners in Zone 2 will wait five to ten years for a license while others in Zone 3 will wait decades or may never receive a STR license at all.

Defendant improperly urges the Court to limit its inquiry to a cursory review and, in support of this argument, the Town cautions the Court not to act as a super legislature by second guessing the Town's policies. However, Plaintiff does not seek the Court's evaluation of the Ordinances from a legislative perspective; rather, Plaintiff seeks, inter alia, the Court's review of the discriminatory intent and effect of the Ordinances and whether such discrimination is rationally related to a legitimate Town policy goal. A careful analysis of the Town's stated policy goals shows

the discrimination arising from the Ordinances and is not rationally related to any legitimate interest of the Town.

In Defendant's motion, the Town argues that because the Ordinances recite policy justifications for the Ordinances, including: (i) changes to Town character; (ii) need for affordable long term housing stock, and (iii) greater restrictions on STRs, the Court should summarily conclude that the Ordinances are rationally related to the Town's goals and dismiss Plaintiff's claims on this basis. Motion, p. 9. The applicable case law does not support Defendant's process. Rational basis review supports a more careful equal protection analysis under which reviewing courts determine whether the *disparate treatment* is rationally related to a legitimate state purpose. *Zobel v. Williams*, 457 U.S. 55, 60 (1982)("[w]hen a state distributes benefits unequally, the *distinctions it makes* are subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment.") (emphasis added.).  Certain offered policy goals may not represent a legitimate state purpose.  *Id*. at 68.  Thus, the Town's mere recital of certain public policies does not satisfy the rational relationship requirement. Rather, the specific purposes in justification of the discrimination the Ordinances cause is the correct metric.

As the Town admits in its Motion, the Ordinances rely on basic recitals about negative impacts from STRs within the Town, including the reduction in the supply for workforce housing and a change in character of the Town. Motion, p. 8. However, these policy statements, especially a change in the character of the Town, do not logically support disparate treatment of homeowners within the Town.  By the Council's own admission:  The Town has not had a large number of hotels, motels, and other formal lodging establishments.  "Historically, the long-term rental of residential property…. has been an important means for providing workforce housing within the Town…. short-term rental of residential properties has historically been an important component

9

of the temporary housing required for many visitors of the town…. Short-term rentals currently exist throughout the Town." Ordinance 29, § 1(E, G, I).  The purported "Change in Character of the Town" is absurd.  The Town has always been comprised of "accommodation units." Ordinance 28, § 1(Q)(3).

The Town ignores the fact that its historic efforts, implementation of its strategic and comprehensive plans, annexation practices, as well as its outward support of the Town Tourism board's efforts to increase tourism and overnight stays, has made the Town of Breckenridge one of the largest resort communities in North America.  With the adoption of its STR Ordinances, the Town now attempts to address the perceived issues that it created by imposing unfair and misdirected legislative regulations causing disparate treatment among similarly situated homeowners.  Moreover, the Town's new Zones, caps in each Zone and the Town-wide restriction in the number of STR licenses to 2,200 does nothing to address the operational concerns cited by the town: loud and excessive noise, improper parking, and trash not disposed of properly.  These purported justifications for separate classes of homeowners are unsupported and disconnected from the zone-specific STR caps and the creation of the zones themselves.

As alleged in Plaintiff's Complaint, the Ordinances discriminate between similarly situated homeowners whereby even some *current* homeowners are practically deprived of ever obtaining a STR license.  Additionally, new homeowners will certainly face disparate treatment based on recency of arrival in the Town and the resulting ineligibility for an STR license.  Again, the disparate treatment must be at least rationally related to the Town's legitimate goals. *Id.* at 60.  However, other than the foregoing, the Town cites no specific justification for such disparate treatment. The Town may certainly offer general policy goals as the Town has done in the Ordinances. To survive Equal Protection review, however, the Ordinances must logically justify

10

the disparate treatment. *Hooper v. Bernalillo County Assessor*, 472 U.S. 612, 622 (1985). Put simply, establishing disparate classes of homeowners and disadvantaging later arriving homeowners over established STR license holders represent prohibited disparate treatment not rationally related to the Town's stated policy goal of addressing changes in character of the Town.

### B. The Ordinances were Enacted for an Illegitimate Purpose: Municipal and Geographic Rent Control.

Under Colorado Law, the Town may not enact a statute which either in purpose or effect controls rent. C.R.S. § 38-12-301.  The Ordinances violate Colorado rights of an owner of either private residential property or a private residential housing unit.  Therefore, because the legislative purpose for which the Ordinances were adopted violates Colorado state law, the Ordinances are also invalid under the rational relationship test.

As the Colorado legislature observed: "[t]he general assembly finds and declares that the imposition of rent control on private residential housing units is a matter of statewide concern; therefore, no county or municipality may enact any ordinance or resolution that would control rent on either private residential property or a private residential housing unit." C.R.S. § 38-12-301. "Rent control statutes come in all types, shapes and sizes." *Town of Telluride v. Lot Thirty-Four Venture, L.L.C.,* 3 P.3d 30, 35 (Colo. 2000), *as modified on denial of reh'g* (Feb. 26, 2000) (internal quotation omitted).  Although some ordinances have the laudable purpose of increasing affordable housing within the communities where lower income employees work, the prohibition in section 38–12–301 on rent control is unambiguous and complete, encompassing "any ordinance or resolution which would control rents." *Id.*  "Rent control" is not a term of art, and the language of the statue is sufficiently broad to encompass any mandate that would *operate* to control rents.  *Id.*

11

The statute is clear on its face and legislative history need not be considered, including the historic conditions that triggered the General Assembly's decision to ban rent controls. *Id.* at 36.

Additionally, the Ordinances are a direct and purposeful violation of Colorado's Unfair Practices Act. C.R.S. § 6-2-103(1). The Town is a municipal corporation who is engaged in the sale of services of STRs by its licensing requirements. The Town has designed its STR Ordinances to intentionally prevent competition in the STR market by enshrining the rights of existing STR license holders to the detriment of some of Plaintiff's members, who own real property that meet all qualifications of a STR, desire to operate STRs, but cannot as a result of the STR license cap in their respective Zone. Plaintiff's Complaint, ¶¶ 146–153, (showing arbitrary license caps based on geographic location). Discrimination based on the four geographic Zones is *required* for the Ordinances' economic scheme to be effective. Defendant's Motion, Doc. # 11, p. 8. Property owners in Zones farther from the ski resorts must charge less for rent, (a lower non-STR rate *vs*. the higher STR rate) in order for the Town's local workforce to benefit.

This discriminatory geographic rent control is another illegitimate purpose of the Ordinances. Zone 3 includes ski in/out properties high on the mountain where the rent is higher. Zone 3 properties are beyond the ability of most local workers to afford. Also, these Zone 3 developments are an example of how the use of LUDs to drive the creation of Zones contradicts Defendant's statement on page 8 of the Motion to Dismiss that "the loss of long-term housing stock provide a rational basis for distinguishing between neighborhood areas and tourist-oriented areas around the ski resorts".

**II. The Ordinances Violate Plaintiff's Right to Substantive Due Process.**

"For a substantive due process claim challenging a legislative-type action, we first ask whether the government action implicates a fundamental right." *Valdez v. Grisham*, 21-2105, 2022

12

WL 2129071, at *4 (10th Cir. June 14, 2022) (citing *Halley v. Huckaby,* 902 F.3d 1136, 1153 (10th Cir. 2018). If it does, strict scrutiny is applied; if it does not, courts consider whether the government action is rationally related to a legitimate government purpose. *Id*. In any event, for purposes of Defendant's Motion, the Ordinances violate substantive due process under the rational relationship test. While similar to the equal protection analysis, substantive due process lens does not require different treatment of similarly situated individuals. Rather, the analysis turns solely on whether the legislation is rationally related to a legitimate government interest. *Washington v. Glucksberg*, 521 U.S. 702, 703 (1997). Here, even if the Court somehow does not find disparate treatment of similar individuals, the Court should still invalidate the Ordinances because they are not rationally related to a legitimate municipal government interest in Colorado given the stated goal of rent control.

### III. The Ordinance are Local Economic Protections that Impermissibly Burden Interstate Commerce.

A State may not promote its own economic advantages by curtailment or burdening of interstate commerce. *H. P. Hood & Sons, Inc. v. Du Mond,* 336 U.S. 525 532 (1949) (citing *Baldwin v. G.A.F. Seelig, Inc.,* 294 U.S. 511, 527 (1935). "In its modern cases, this Court has said that the Commerce Clause prohibits the enforcement of state laws driven by economic protectionism— that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Nat'l Pork Producers Council v. Ross,* 598 U.S. 356, 369 (2023) (internal quotations omitted). State laws discriminating against interstate commerce on their face are "virtually *per se* invalid." *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.,* 520 U.S. 564, 575 (1997).

The first step in analyzing any law under the negative Commerce Clause is to determine whether it regulates evenhandedly with only incidental effects on interstate commerce or

discriminates against interstate commerce. *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.,* 511 U.S. 93, 99 (1994) (internal quotations omitted).  To "discriminate" simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.  *Id.*  If a restriction on commerce is discriminatory, it is "virtually *per se* invalid."  *Id.*

In *Camps Newfound/Owatonna, Inc.*, the Supreme Court analyzed and invalidated a Maine statute that provided for a tax exemption for charitable institutions incorporated within Maine under the Dormant Commerce Clause.  520 U.S. 564, 567–68 (1997). [2]  The plaintiff, a charitable institution operated principally for the benefit of non-residents, could only qualify for a limited tax benefit.  *Id.* Mere labeling of the statute as non-commerce did not shield the law from the dormant Commerce Clause, acceptance of the town's theory would yield "radical and unacceptable" results. *Id.* at 575.  The Court determined it was not necessary to look beyond the text of the statute to determine that it discriminated against interstate commerce because the law expressly distinguished between entities who serve a principally interstate clientele and those that primarily serve an intrastate market, to the benefit of the intrastate entities.   *Id*. at 575.

Here, the explicit economic objective of the Ordinances is to benefit the local in-state workforce with lower rent at the expense of STR property owners and their out-of-state guests.  There can be no dispute that (1) out-of-state guests stay for shorter durations and utilize hotels and STRs more than the local workforce and (2) interstate commerce is substantially affected by STRs.  As in *Camps Newfound/Owatonna, Inc.*, the Ordinances "expressly distinguishes between entities that serve a principally interstate clientele and those that primarily serve an intrastate market,

---

[2] The Court analogized to *Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241 (1964), stating that the camps at issue were similar to hotels and that "interstate commerce is substantially affected by the activities of a hotel." *Camps Newfound/Owatonna, Inc.*, 520 U.S. at 573.

singling out [property owners] that serve mostly in-staters for beneficial tax treatment, and penalizing those camps that do a principally interstate business." Not only do the Ordinances discourage interstate commerce, they also prohibit similarly situated property owners from engaging in STRs in totality for 30 or more years. Plaintiff's Complaint, ¶ 100. Thus, the "virtually *per se* rule of invalidity" applies and the Ordinances are subject to the "strictest scrutiny" test. The Town must justify the statute both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake. *Direct Mktg. Ass'n v. Brohl,* 814 F.3d 1129, 1140 (10th Cir. 2016).

Instead of advocating the Town's ordinances meet the appropriate "strict scrutiny" test or even the "balancing test," the Town argues the Ordinances regulate even-handedly because "the STR Ordinances do not distinguish between in- and out-of-state property owners." The Town's argument misses the mark. Defendant is applying an equal protection analysis as opposed to a Dormant Commerce Clause analysis where *interstate commerce* itself is the relevant inquiry, not regulation of similarly situated persons. The question posed by the Town, *i.e.,* whether the challenged STR caps apply equally to in-state owners or out-of-state owners, is not the relevant inquiry. Rather, how the Ordinances affect interstate commerce by prohibiting some Plaintiff's members from engaging in STRs, forcing them to rent their properties only as long-term rentals for the express purpose of benefitting the local workforce, is the more relevant inquiry. Since it is the Town's burden under "strict scrutiny" to establish (1) the local benefits flowing from the statute and (2) the unavailability of nondiscriminatory alternatives, and the Town has not raised any argument concerning either, the Court must deny Defendant's Motion concerning Plaintiff's Fifth Claim, as it would be improper to raise such argument for the first time in a Reply. *Cone v. Bell,* 556 U.S. 449, 483 (2009); *United States v. Johnson,* 732 Fed. Appx. 638, 646 (10th Cir. 2018)

(quoting *M.D. Mark, Inc. v. Kerr-McGee Corp.,* 565 F.3d 753, 768 n.7 (10th Cir. 2009*));  United States v. Hardman,* 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived.").  Plaintiff has pleaded sufficient facts which plausibly suggest the Ordinances substantially harm interstate commerce and that that harm was intentional by the Town to benefit the local workforce.

### IV. The Town's Effort to Dismiss Plaintiff's State Law Preemption Claim is Premature and Improper.

This case was first filed in Colorado's 5th Judicial District in the Summit County District Court. The Town elected to remove this case to federal court, but now asks this Court not to exercise supplemental jurisdiction over Plaintiff's rent control preemption claim. In support of this request, the Town cites to 28 U.S.C. 1367(c)(3) and boldly presumes that this Court will summarily dismiss all claims over which the Court has original jurisdiction leaving this Court without any means of asserting jurisdiction over Plaintiff's state law preemption claim. This outcome, however, has not happened yet and the Town's request is premature and presumptuous.

In any event, the facts of this case and the claims at issue cut in favor of this Court exercising supplemental jurisdiction over Plaintiff's single state law claim.

First, 28 U.S.C. 1367(a) provides, in relevant part:

> "…in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

As evidenced by Plaintiff's well-pleaded complaint, the facts supporting all of Plaintiff's claims and the claims themselves are all part of the same case and controversy involving Plaintiff's

16

Constitutional claims. Put simply, the claims and facts supporting such claims are all significantly intertwined.

Further, Plaintiff state the law preemption claim does not satisfy any of the factors under 28 U.S.C. 1367(c) justifying declining supplemental jurisdiction over the state law preemption claim.

For all of these reasons, this Court should exercise supplemental jurisdiction over Plaintiff's state law claim unless and until factor(s) under 28 U.S.C. 1367(c) arise in this case.

## CONCLUSION

Defendant's F.R.C.P 12(b)(6) Motion to Dismiss focuses solely on its belief that as a government municipality conducts a public hearing and includes in its legislative ruling, a public interest that the process and law it undertook are immune from legal challenge. If this were true then public citizens would be left with no legal recourse to challenge a law they believe to be irresponsible, unconstitutional, or adopted for personal gain. The standard of review under a 12(b)(6) Motion is to accept as true all well pleaded factual allegations in the complaint and to view these allegations in the light most favorable to plaintiff. *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006). Further, because the factual allegations state a plausible claim for relief, such claims should survive the motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

Beyond the straightforward issue of whether Plaintiff's allegations are factual and state a plausible claim for relief Defendant's motion to dismiss is nothing more than an attempt to muddy the waters by introducing their own facts that contradict or misstate Plaintiff's detailed allegations. The Plaintiff views this as nothing more than a distraction coupled with a premature request to rule on disputed material facts which is inappropriate and premature. *Edmonson v. Lincoln Nat. Life Ins. Co.,* 777 F. Supp. 2d 869 (E.D. Pennsylvania 2011).

17

Defendant's motion seeks to partially dismiss Plaintiff's claims that are based on Federal and Colorado state constitutional grounds, and to dismiss without prejudice Plaintiff's state preemption claim.  Defendant's tactic is inappropriate given that Plaintiff's claims and supporting allegations are intertwined. The appropriate step is for this court to either hear all of Plaintiff's claims or to have the complaint, in its entirety, sent back to state court which the Plaintiff believes is the appropriate jurisdiction to consider these mixed Federal and state issues, intertwined allegations and legal arguments.  To bifurcate Plaintiff's claims will prejudice Plaintiff and prevent it from asserting all claims in their best light and as it is entitled to under the law.

Plaintiff respectfully requests that the Court DENY Defendant's Motion to Dismiss in its entirety.  Alternatively, Plaintiff requests that the case in its entirety be sent back to state court.

Dated:  January 17, 2024.

| KNAPP & ASSOCIATES, LLC | FRASCONA, JOINER, GOODMAN AND GREENSTEIN, P.C. |
|---|---|
| */s/ Timothy J. Knapp* <br> Timony J. Knapp, #18867 <br> 11747 W. 54th Pl. <br> Arvada, CO 80002 <br> 720-333-2222 <br> *Attorneys for Plaintiff* | */s/ Jordan C. May* <br> Jordan C. May, #38734 <br> Ryan P. Horace, #53091 <br> 4750 Table Mesa Drive <br> Boulder, CO  80305-5541 <br> (303) 494-3000 <br> *Attorneys for Plaintiff* |

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the foregoing document was provided to the persons herein next designated by E-service, via PACER, on January 17, 2024.

Geoffrey C. Klingsporn
Josh A Marks
BERG, HILL, GREENLEAF, RUSCITTI LLP
1712 Pearl Street
Boulder, CO 80302
303-402-1600
Geoffrey.klingsporn@bhgrlaw.com
jam@bhgrlaw.com
*Attorneys for Defendant*

                                        Frascona, Joiner, Goodman & Greenstein

                                        */s/ Alyssa Colwell*
                                        Alyssa Colwell | Paralegal