# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLORADO

**COLORADO PROPERTY OWNERS FOR PROPERTY RIGHTS**, a Colorado Nonprofit Corporation
  Plaintiff,
v.

**TOWN OF BRECKENRIDGE, COLORADO,**
A Home Rule Municipal Corporation
  Defendant.

Civil Action No.: 2023CV3171-NYW-NRN

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Colorado Property Owners for Property Rights ("Plaintiff" or "COPR"), by and through undersigned counsel, submits this Response to Defendant's Motion to Dismiss as follows:

## INTRODUCTION

Defendants would have this court believe that so long as a municipality's ordinance includes a public purpose and such municipality went through the window dressing process of a public hearing, then the legislative action is automatically valid and may not be legally challenged. Defendant's principal argument in its motion to dismiss is premised on this erroneous premise. The Town also inappropriately attempts to have this Court lock in a standard of review at this early stage of the case suggesting the Court apply the rational basis standard. Plaintiffs do not concede that the standard for review is a rational basis, rather, the correct standard for review for its constitutional claims is intermediate scrutiny. However, for the sake of Defendant's motion to dismiss Plaintiff will show how its detailed allegations pass even the rational basis test.

Defendant correctly cites caselaw stating a complaint must contain factual allegations, accepted as true and interpreted in the light most favorable to the nonmoving

1

party. Yet it ignores this standard when challenging Plaintiff's claims by asserting facts of its own that are contrary either to, or misrepresentations of, the detailed factual allegations contained in Plaintiff's Complaint. When the parties dispute material facts a court should not act as a factfinder and must construe all disputed facts in favor of the plaintiff. *S. Utah Wilderness All. v. Palma,* 707 F.3d 1143, 1152 (10th Cir. 2013) (citing *Warth v. Seldin,* 422 U.S. 490, 501 (1975)).

Disputed material facts should not be resolved at the motion to dismiss stage. *Edmonson v. Lincoln Nat. Life Ins. Co.,* 777 F. Supp. 2d 869 (E.D. Pennsylvania 2011). Plaintiff's Complaint contains factual allegations that detail how the Town of Breckenridge's short-term rental ("STR") ordinances are unsupported, irrational, arbitrary, and discriminatory under federal and state laws[1]. Examples of detailed factual allegations include: (1) Defendant arbitrarily set in stone a cap on the number of STR licenses before receiving staff input, void of any relevant statistical analysis, made without the recommendations of its Task Force and formal public input; (2) the Town council randomly selected the number of licenses for each of the Town's four STR zones and then during a public hearing, and without any rationale or support for doing so, arbitrarily shifted the number of licenses in each zone; (3) Defendant adopted the STR ordinances in violation

---

[1] On September 28, 2021, Town Council adopted Ordinance No. 29 with an effective date of November 2, 2021. ("Ordinance 29") In part, Ordinance 29 restricts the number of STR Licenses in the Town of Breckenridge to 2,200. On August 23, 2022, Town Council adopted Ordinance No. 28 with an effective date of September 27, 2022. Ordinance 28 districts the Town into 4 zones and sets STR caps within each zone. (Collectively, Ordinances 29 and 28 are referred to herein as the "Ordinances").

of prior development agreements; (4) the Town's Community Development Manager, without Council's authorization, narrowed the Task Force's scope of work to no longer consider evaluating the cap of STR licenses[2]; and (5) without naming specific members, Plaintiff details that members live side-by-side in the same subdivision, are similarly situated, yet one is in Zone 1 and the other Zone 3. This disparate treatment resulted in a radically different ability for one member to obtain a STR license and other unequal treatment.

Plaintiff's Complaint provides sufficient factual allegations that state plausible claims for relief. For these reasons the Court should deny Defendant's Motion to Dismiss.

## STANDARD OF REVIEW

**A. Standard of Review Applicable to F.R.C.P. 12(b)6)**

Dismissal under Rule 12(b)(6) "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (citing *Duran v. Carris,* 238 F.3d 1268, 1270 (10th Cir.2001)).

"[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to plaintiff." *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006). "Under *Twombly*, the relevant question is whether, assuming allegations are true, the plaintiff has stated a ground for relief that is plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009). If the factual allegations state a plausible claim for relief, such claim survives the motion to

---

[2] This directive was made against the Mayor's earlier direction to the Task Force. As a result, town council received an incomplete recommendation from its Task Force.

3

dismiss. *Id*. at 680. To survive a 12(b)(6) motion to dismiss the complaint does not need detailed factual allegations, rather, plaintiff's obligation is to provide the grounds of his entitlement to relief and something more than labels and conclusions. See *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).

### B. Standard of Review Applicable to Equal Protection and Due Process Claims

Plaintiff does not concede that the standard of review in this case is rational basis. There is no question Colorado highly values individual property rights and that such rights are deeply rooted in the state's history. Further, recognition of property rights as an important or fundamental is enshrined in the state's constitution and recognized by its highest court. Colorado's Constitution affords property owners greater protections than those afforded by the U.S. Constitution. *Pub. Serv. Co. of Colorado v. Van Wyk,* 27 P.3d 377, 388 (Colo. 2001). "All persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; *of acquiring, possessing and protecting property*; and of seeking and obtaining their safety and happiness." Co Const Art. 2, § 3 (emphasis added). "No person shall be deprived of life, liberty or property, without due process of law." Co Const Art. 2, § 25. By contrast, no court has conclusively determined that the rights to acquire, possess or protect property are not fundamental rights. If ultimately determined to be fundamental rights, the Ordinances would be subject to heighted scrutiny in the evaluation of both substantive due process and equal protection claims.

Federal and state courts have held intermediate scrutiny is triggered when the challenged legislation employs some sort of quasi-suspect classification or *implicates an important right. United States v. Coleman*, 166 F. 3d 428 431 (2 Cir. 1999). Defendant's

4

legislative actions implicates an important individual right, and the correct standard of review is intermediate scrutiny. *United States v. Coleman*, 166 F. 3d 428, 431 (2 Cir. 1999).

Plaintiff's Complaint asserts that the Defendant's STR Ordinances violate its members' equal protection rights in that it requires some, but not all, such property owners to bear the public burden the Defendant claims exist. In *Nollan v. California Coastal Commission,* 483 U.S. 825, 837 (1987) the U.S. Supreme Court used a heightened examination to determine if a required easement was for the promotion of a legitimate state interest and could be achieved by a less imposing requirement.

As documented in caselaw and property law treatises, an individual's right in real property is an important right that demands a heightened analysis when a law impinges on that right. Plaintiff does not concede that rational basis scrutiny is the appropriate standard in this case. However, for purposes of Defendant's motion to dismiss, Plaintiff will demonstrate that the Ordinances do not even withstand a rational basis review.

I.  **Colorado's Long-Standing Respect for Property Rights**

   A. **Municipal Rent Control is Prohibited**

"The general assembly finds and declares that the imposition of rent control on private residential housing units is a matter of statewide concern; therefore, no county or municipality may enact any ordinance or resolution that would control rent on either private residential property or a private residential housing unit."  C.R.S. § 38-12-301. "Rent control statutes come in all types, shapes and sizes." *Town of Telluride v. Lot Thirty-Four Venture, L.L.C.,* 3 P.3d 30, 35 (Colo. 2000), *as modified on denial of reh'g* (Feb. 26, 2000) (internal quotation omitted). Although some ordinances have the laudable purpose of increasing affordable housing within the communities where lower income employees

5

work, the prohibition in section 38–12–301 on rent control is unambiguous and complete, encompassing "any ordinance or resolution which would control rents." *Id*

## B. Colorado's Unfair Practices Act

Colorado's Unfair Practices Act provides, in relevant part:

It is unlawful for any person, firm, or corporation doing business in the state of Colorado and engaged in the production, manufacture, distribution, or sale of any commodity, product, or service of general use or consumption, or the sale of any merchandise or product by any public utility, **with the intent to destroy the competition** of any regular established dealer in such commodity, product, or service, **or to prevent the competition** of any person, firm, private corporation, or municipal or other public corporation that in good faith intends and attempts to become a dealer, **to discriminate between different sections, communities, or cities, or portions thereof, or between different locations in such sections, communities, cities, or portions thereof in this state by selling or furnishing a commodity, product, or service at a lower rate in one section, community, or city, or any portion thereof**, or in one location in such section, community, or city, or any portion thereof than in another after making allowance for the difference, if any, in the grade or quality, quantity, and actual cost of transportation from the point of production, if a raw product or commodity, or from the point of manufacture, if a manufactured product or commodity. C.R.S. § 6-2-103(1) (emphasis added).

"The inhibition in this section against locality discrimination shall embrace any scheme of special rebates, collateral contracts, or any device of any nature whereby such discrimination is, in substance or fact, effected in violation of the spirit and intent of this article." C.R.S. § 6-2-103(3). "The Act is unambiguous; it is intended to apply whenever a business charges different prices to purchasers based on geographic differences with an intent to drive out competition in one geographic area.... A business needs only to discriminate in price based on geographic territories. Any other interpretation would strain

6

the plain meaning and intent of the statute." *Dunlap v. Colorado Springs Cablevision, Inc.,* 855 P.2d 6, 8 (Colo. App. 1992).

## ANALYSIS

The Equal Protection and Due Process clauses protect distinctly different interests. *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004). The "substantive component" of the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests," even when the challenged regulation affects all persons equally; equal protection only applies when the state treats two groups, or individuals, differently. *Id.* (internal quotations omitted).

### I. The Ordinances Violate Plaintiff's Right to Equal Protection.

Equal Protection requires that governments, like the Town, to afford similar treatment to all persons who are similarly situated. *Mayo v. National Farmers Union Property and Cas. Co,* 833 P.2d 54, 57 (Colo. 1992). When a challenged statute does not affect a protected class or involve a fundamental right, it will be overturned only if it is not rationally related to a legitimate state interest. *Edwards v. Valdez,* 789 F.2d 1477, 1483 (10th Cir.1986). The test for rationality review in equal protection cases is the same under the Colorado Constitution. *Coal. for Equal Rights, Inc. v. Owens,* 458 F. Supp. 2d 1251, 1262 (D. Colo. 2006) (citing *People v. McKnight,* 200 Colo. 486 (1980)).

### A. The Ordinances Discriminate against Plaintiff's Members.

To survive Equal Protection review the Ordinances must logically justify the disparate treatment. *Hooper v. Bernalillo County Assessor*, 472 U.S. 612, 622 (1985). Put simply, establishing disparate classes of homeowners over established STR license holders represent prohibited disparate treatment not rationally related to the Town's stated goals of addressing changes in the character of the Town. The Ordinances seek to

7

discriminate against similarly situated homeowners within the Town by rendering homeowners without a license in Zones 2 and 3 effectively unable to rent their homes to tourists and guests while permitting homeowners in Zone 1 to rent their homes to do so. As alleged by Plaintiff, by the Town's own estimates, some homeowners in Zone 2 will wait for five to ten years for a license while others in Zone 3 will wait decades or may never receive a STR license at all.

Defendant improperly urges the Court to limit its inquiry to a cursory review and, in support of this argument, the Town cautions the Court not to act as a super legislature by second guessing the Town's policies. However, Plaintiff does not seek the Court's evaluation of the Ordinances from a legislative perspective; rather, Plaintiff seeks, inter alia, the Court's review of the discriminatory intent and effect of the Ordinances and whether such discrimination is rationally related to a legitimate Town policy goal. A careful analysis of the Town's stated policy goals shows the discrimination arising from the Ordinances is not rationally related to any legitimate interest of the Town.

The Town argues that because the Ordinances recite general policy justifications for the Ordinances, including: (i) changes to Town character; (ii) need for affordable long term housing stock, and (iii) greater restrictions on STRs, the Court should summarily conclude that the Ordinances are rationally related to the Town's goals. Defendant's Motion, p. 9. Rational basis review requires a more careful equal protection analysis where reviewing courts determine whether the *disparate treatment* is rationally related to a legitimate state purpose. *Zobel v. Williams*, 457 U.S. 55, 60 (1982). ("[W]hen a state distributes benefits unequally, the *distinctions it makes* are subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment."). (emphasis added.) Certain offered policy goals may not represent a legitimate state purpose. *Id*. at 68.

As the Town admits in its Motion, the Ordinances rely on basic recitals about negative impacts from STRs within the Town, including the reduction in the supply for workforce housing and a change in character of the Town. Defendant's Motion, p. 8. But these policy statements, especially a change in the character of the Town, do not logically support disparate treatment of homeowners within the Town. By the Council's own admission: The Town does not have a large number of hotels, motels, and other formal lodging establishments and greatly relies on short term rentals to support its economy and meet the demand of visiting guests.

Defendant ignores the fact that its historic efforts, implementation of its strategic and comprehensive plans, annexation practices, as well as its outward support of the Town Tourism board's efforts to increase tourism and overnight stays, has made the Town of Breckenridge one of the largest resort communities in North America.

**B. The Ordinances were Enacted for an Illegitimate Purpose: Municipal and Geographic Rent Control.**

The Ordinances are a direct and purposeful violation of Colorado's Unfair Practices Act. C.R.S. § 6-2-103(1). The Town is a municipal corporation who is engaged in the sale of services of STRs by its licensing requirements. The Town has designed its STR Ordinances to intentionally prevent competition in the STR market by preserving the rights of existing STR license holders to the detriment of some of Plaintiff's members, who own real property that meet all qualifications of a STR, desire to operate STRs, but cannot as a result of the STR license cap in their respective Zone. Plaintiff's Complaint, ¶¶ 146–153, (showing arbitrary license caps based on geographic location). Discrimination based on the four geographic Zones is *required* for the Ordinances' economic scheme to be effective. Defendant's Motion, p. 8. Property owners in Zones farther from the ski

resorts must charge less for rent, (a lower non-STR rate *vs.* the higher STR rate) in order for the Town's local workforce to benefit.

This discriminatory geographic rent control is another illegitimate purpose of the Ordinances. Zone 3, where the Town intends to convert STR's to long term employee housing, includes ski in/out properties higher on the mountain where the homes and properties are in the multi-million-dollar price range. Zone 3 properties are beyond the affordability of local workers. Also, these Zone 3 developments are an example of how the use of LUDs to drive the creation of Zones contradicts Defendant's statement, "the loss of long-term housing stock provide a rational basis for distinguishing between neighborhood areas and tourist-oriented areas around the ski resorts". *Id.*

Of course, as stated in the Ordinances, the Town's goal is to manipulate the supply and affordability of the Town's affordable housing. In so doing, the Town's Ordinances violate Colorado's statutory prohibition against rent control as codified under C.S.R. § 38-12-301 and, thus, the Ordinances are preempted by state law.

## II. The Ordinances Violate Plaintiff's Right to Substantive Due Process.

"For a substantive due process claim challenging a legislative-type action, we first ask whether the government action implicates a fundamental right." *Valdez v. Grisham*, 21-2105, 2022 WL 2129071, at *4 (10th Cir. June 14, 2022) (citing *Halley v. Huckaby,* 902 F.3d 1136, 1153 (10th Cir. 2018). If it does, strict scrutiny is applied; if it does not, courts consider whether the government action is rationally related to a legitimate government purpose. *Id*. While similar to the equal protection analysis, substantive due process lens does not require different treatment of similarly situated individuals. Rather, the analysis turns solely on whether the legislation is rationally related to a legitimate government interest. *Washington v. Glucksberg*, 521 U.S. 702, 703 (1997). Here, even if the Court

somehow does not find disparate treatment of similar individuals, the Court should still invalidate the Ordinances because they are not rationally related to a legitimate municipal government interest in Colorado given the stated goal of rent control.

### III. The Ordinance are Local Economic Protections that Impermissibly Burden Interstate Commerce.

A State may not promote its own economic advantages by curtailment or burdening of interstate commerce. *H. P. Hood & Sons, Inc. v. Du Mond,* 336 U.S. 525, 532 (1949) (citing *Baldwin v. G.A.F. Seelig, Inc.,* 294 U.S. 511, 527 (1935). "In its modern cases, this Court has said that the Commerce Clause prohibits the enforcement of state laws driven by economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Nat'l Pork Producers Council v. Ross,* 598 U.S. 356, 369 (2023) (internal quotations omitted). State laws discriminating against interstate commerce on their face are "virtually *per se* invalid." *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.,* 520 U.S. 564, 575 (1997).

The first step in analyzing any law under the negative Commerce Clause is to determine whether it regulates evenhandedly with only incidental effects on interstate commerce or discriminates against interstate commerce. *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.,* 511 U.S. 93, 99 (1994) (internal quotations omitted). To "discriminate" simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. *Id.* If a restriction on commerce is discriminatory, it is "virtually *per se* invalid." *Id.*

In *Camps Newfound/Owatonna, Inc.*, the Supreme Court analyzed and invalidated a Maine statute that provided for a tax exemption for charitable institutions incorporated

11

within Maine under the Dormant Commerce Clause. 520 U.S. 564, 567–68 (1997).[3] The plaintiff, operated principally for the benefit of non-residents, could only qualify for a limited tax benefit. *Id.* Mere labeling of the statute as non-commerce did not shield the law from the dormant Commerce Clause and acceptance of the town's theory would yield "radical and unacceptable" results. *Id.* at 575. It was not necessary to look beyond the text of the statute to determine that it discriminated against interstate commerce because the law expressly distinguished between entities who serve a principally interstate clientele and those that primarily serve an intrastate market, to the benefit of the intrastate entities. *Id*. at 575.

Here, the explicit economic objective of the Ordinances is to benefit the local in-state workforce with lower rent at the expense of STR property owners and their out-of-state guests. There can be no dispute that (1) out-of-state guests stay for shorter durations and utilize hotels and STRs more than the local workforce and (2) interstate commerce is substantially affected by STRs. As in *Camps Newfound/Owatonna, Inc.*, the Ordinances "expressly distinguishes between entities that serve a principally interstate clientele and those that primarily serve an intrastate market, singling out [property owners] that serve mostly in-staters for beneficial tax treatment, and penalizing those camps that do a principally interstate business." Additionally, the Ordinances prohibit similarly situated property owners from engaging in STRs in totality for 30 or more years. Plaintiff's

---

[3] The Court analogized to *Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241 (1964), stating that the camps at issue were similar to hotels and that "interstate commerce is substantially affected by the activities of a hotel." *Camps Newfound/Owatonna, Inc.*, 520 U.S. at 573.

12

Complaint, ¶ 100. Thus, the "virtually *per se* rule of invalidity" applies and the Ordinances are subject to the "strictest scrutiny" test. The Town must justify the statute both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake. *Direct Mktg. Ass'n v. Brohl,* 814 F.3d 1129, 1140 (10th Cir. 2016).

The Town argues the Ordinances regulate even-handedly because "the STR Ordinances do not distinguish between in - and out-of-state property owners." The Town's argument misses the mark. Defendant is applying an equal protection analysis as opposed to a Dormant Commerce Clause analysis where *interstate commerce* itself is the relevant inquiry, not regulation of similarly situated persons. The Court must analyze how the Ordinances affect interstate commerce by prohibiting some Plaintiff's members from engaging in STRs, forcing them to rent their properties only as long-term rentals for the express purpose of benefitting the local workforce. Since it is the Town's burden under "strict scrutiny" to establish (1) the local benefits flowing form the statute and (2) the unavailability of nondiscriminatory alternatives, and the Town has not raised any argument concerning either, the Court must deny Defendant's Motion concerning Plaintiff's Fifth Claim as it would be improper to raise such argument for the first time in a Reply. *Cone v. Bell,* 556 U.S. 449, 483 (2009); *United States v. Hardman,* 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived."). Plaintiff has pleaded sufficient facts which plausibly suggest the Ordinances substantially harm interstate commerce and that that harm was intentional by the Town to benefit the local workforce.

### IV. The Town's Effort to Dismiss Plaintiff's State Law Preemption Claim is Premature and Improper.

This case was first filed in Colorado's 5th Judicial District in the Summit County District Court. The Town elected to remove this case to federal court, but now asks this Court not to exercise supplemental jurisdiction over Plaintiff's rent control preemption claim. The Town does not seek the outright dismissal of Plaintiff's preemption claim for relief (First Claim for Relief). Rather, it asks the Court to dismiss this claim without prejudice after all the Plaintiff's combined federal and state-based claims are dismissed. In so doing, Defendant's motion does not contend that Plaintiff's preemption claim should be dismissed under F.R.C.P. 12(b)(6). The Town's request for dismissal of Plaintiff's preemption claim for lack of subject matter jurisdiction is premature and presumptuous given that there is no disposition of Plaintiff's Constitutional claims at this point. Thus, this Court should only determine the Town's request for dismissal without prejudice after the Court has reached a disposition of Plaintiff's Constitutional claims and pursuant to applicable law, including without limitation 28 U.S.C. 1367(c).

## CONCLUSION

Defendant's Motion to Dismiss focuses on its belief that if a Colorado municipality conducts a public hearing and includes in its legislative act a public interest statement, then the law is immune from legal challenge. If this were true then public citizens would be left with no legal recourse to challenge irresponsible, unconstitutional, or otherwise unlawful regulations. Beyond the straightforward issue of whether Plaintiff's allegations are factual and state a plausible claim for relief Defendant's motion to dismiss is nothing more than an attempt to muddy the waters by introducing their own facts that contradict or misstate Plaintiff's detailed allegations. Plaintiff views this as nothing more than a distraction coupled with a premature request to rule on disputed material facts which is inappropriate and premature.

Defendant's motion seeks to partially dismiss Plaintiffs claims that are based on Federal and Colorado state Constitutional grounds and to dismiss without prejudice Plaintiff's state preemption claim. This tactic is inappropriate given that Plaintiff's claims and supporting allegations are intertwined. The appropriate step is for the Court to either hear all of Plaintiffs claims or to have the Complaint, in its entirety, sent back to state court which Plaintiff believes is the appropriate jurisdiction to consider these mixed Federal and state intertwined allegations and claims. *Burford v. Sun Oil Co.*, 319 U.S. 315, 317–18 (1943); *Vinyard v. King*, 655 F.2d 1016, 1018 (10th Cir. 1981) (citing *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 (1941)). To bifurcate Plaintiff's claims will prejudice Plaintiff and prevent it from asserting all claims in their best light as it is entitled to under the law.

Plaintiffs respectfully request that the Court DENY Defendant's Motion to Dismiss in its entirety. Alternatively, Plaintiff requests that the case in its entirety be sent back to state court.

Dated: January 22, 2024.

| | |
|---|---|
| KNAPP & ASSOCIATES, LLC | FRASCONA, JOINER, GOODMAN AND GREENSTEIN, P.C. |
| */s/ Timothy J. Knapp* <br> Timony J. Knapp, #18867 <br> 11747 W. 54th Pl. <br> Arvada, CO 80002 <br> 720-333-2222 <br> *Attorneys for Plaintiff* | */s/ Jordan C. May* <br> Jordan C. May, #38734 <br> Ryan P. Horace, #53091 <br> 4750 Table Mesa Drive <br> Boulder, CO 80305-5541 <br> (303) 494-3000 <br> *Attorneys for Plaintiff* |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was provided to the persons herein next designated by E-service, via PACER, on January 22, 2024.

Geoffrey C. Klingsporn
Josh A Marks
BERG, HILL, GREENLEAF, RUSCITTI LLP
1712 Pearl Street
Boulder, CO 80302
303-402-1600
Geoffrey.klingsporn@bhgrlaw.com
jam@bhgrlaw.com
*Attorneys for Defendant*

    Frascona, Joiner, Goodman & Greenstein

    */s/ Alyssa Colwell*
    Alyssa Colwell | Paralegal