IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-03171-NYW-NRN

COLORADO PROPERTY OWNERS FOR PROPERTY RIGHTS,

    Plaintiff,

v.

TOWN OF BRECKENRIDGE, COLORADO,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Motion to Dismiss (the "Motion") filed by Defendant Town of Breckenridge, Colorado ("Defendant" or "Breckenridge"). [Doc. 11, filed December 13, 2023].[1] Plaintiff Colorado Property Owners for Property Rights ("Plaintiff") filed its Response on January 22, 2024, [Doc. 21], and Defendant filed their Reply on February 5, 2024, [Doc. 22]. The issues have been fully briefed and are ripe for resolution without the need for oral argument. For the reasons stated below, the Court respectfully **GRANTS** in part and **DENIES** in part the relief sought in the Motion and **REMANDS** the case for further proceedings.

## BACKGROUND

The following facts are drawn from the operative Complaint [Doc. 5] and are presumed true for the purposes of this instant Motion. Breckenridge is a Colorado home

---

[1] When citing to a filing on the docket in this action, this Court uses the convention [Doc. __] and the page number assigned by the District's Electronic Court Files ("ECF") system. When citing to a docket in another action, this Court uses the convention [ECF. __] and the page number assigned by the ECF system.

rule municipality in the Rocky Mountains. [*Id.* at ¶¶ 10, 16]. It is a world-class resort community with a tourism-based economy related primarily to skiing and snowboarding. [*Id.* at ¶¶ 16–18]. The high volume of tourist visits leads to strong demand for guest accommodations. [*Id.* at ¶¶ 25–27]. In recent years, such demand has been met with homeowners increasingly renting their properties, often second homes, as guest accommodations in Breckenridge as short-term rentals ("STRs"). [*Id.* at ¶¶ 25–26, 42–43, 45].

Breckenridge is governed by the Breckenridge Town Council ("Town Council"). [*Id.* at ¶ 11]. Ordinances adopted by the Town Council require those operating STRs, or any other accommodation unit, to receive an annual license. [*Id.* at ¶¶ 33, 38]. In 2021, Breckenridge imposed a cap on the number of licenses issued for certain STRs ("STR Licenses") and, in 2022, it placed further restrictions on where those STR Licenses would be available. [*Id.* at ¶¶ 34–37]. Specifically, on September 28, 2021, the Town Council adopted Ordinance No. 29 with an effective date of November 2, 2021 ("Ordinance 29"). [*Id.* at ¶ 36]. Ordinance 29 distinguished between "exempt" and "nonexempt" accommodation units. [Doc. 11-1 at 2, § P].[2] Exempt units are those that provided certain twenty-four-hour services, including as a "staffed front desk" and "private security capable of responding to complaints." [*Id.*]. Nonexempt units are those that did not provide such services, such as the aforementioned second homes. [*Id.*]. The Town

---

[2] Breckenridge attaches copies of the Ordinances to its Motion. [Doc. 11-1 and 11-2]. Plaintiff also refers to them in its Response to the Motion. *See, e.g.*, [Doc. 21 at 2 n.1]. The Court will consider these without converting the instant Motion to one for summary judgment because the Ordinances are referred to in the Complaint, their authenticity is not in dispute, and they are central to Plaintiff's claims. *See Cnty. of Santa Fe v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002).

2

Council found that the exempt units "require substantially less [Breckenridge] staff time to monitor and regulate than do nonexempt accommodation units." [*Id*.] Ordinance 29 imposed a limit of 2,200 STR Licenses for nonexempt accommodation units and made such licenses nontransferable, subject to certain exceptions. [Doc. 5 at ¶ 49].

In adopting Ordinance 29, the Town Council made several findings in support of its decision, including identifying three "problems associated with the large number of nonexempt accommodation units currently operating" that it sought to address. First, the Town Council found that conversion of property for use as STRs caused a "serious and disturbing reduction in the availability of workforce housing [that i]f not addressed . . . will have a demonstrable negative impact on the overall economy." [Doc. 11-1 at 2, § Q.1]. Second, the Town Council expressed unidentified concerns about a "change in the character of the area" as a "direct result of the operation of some of the accommodations units." [*Id*. at § Q.3]. Third, it found some "short-term rentals are operated in such a manner as to create significant negative impacts [such as] loud and excessive noise, improper parking, and trash that is not disposed of properly." [*Id*. at § Q.4].

After adopting Ordinance 29, the Town Council commissioned a Tourism Overlay District Task Force ("Task Force") to, among other things, review the location of current STRs and consider areas where STR Licenses could be increased. [Doc. 5 at ¶¶ 54, 68–69]. The Task Force was, however, told by Breckenridge's Community Development Manager that the Town Council would not accept a higher STR License cap. [*Id.* at ¶ 71]. Ultimately, the Community Development Manager provided the Town Council with a "map that the Task Force[] had prepared containing zones where it believed should receive

3

concentrations of STR Licenses" that included values for the number of licenses in each zone based on a 2,200 STR License cap. [*Id*. at ¶ 76].

On August 23, 2022, the Town Council adopted Ordinance No. 28 with an effective date of September 27, 2022 ("Ordinance 28"). [*Id.* at ¶ 37]. In doing so, the Town Council rejected the Task Force's map and, instead, created four zones with individual limits on STR Licenses that total 2,200 STR Licenses for nonexempt accommodation units:

Zone 1 – Tourism Zone (Maximum of 1,680 STR Licenses)

Zone 2 – Downtown Core Zone (Maximum of 130 STR Licenses)

Zone 3 – Areas not categorized as a resort property and outside Zones 1 & 2 (Maximum of 390 STR Licenses)

Resort Zone – Resort Property Zone (Unlimited exempt licenses)

[*Id*. at ¶ 85].

Plaintiff is a nonprofit advocacy organization that includes among its members owners of interest in residential property in Breckenridge. [*Id.* at ¶¶ 1–7]. On October 31, 2023, Plaintiff filed its Complaint in the state district court for Summit County, Colorado, seeking a declaration that Ordinance 29 and Ordinance 28 are void and unenforceable on statutory and constitutional grounds. [*Id*. at 1, 23]. Plaintiff brings five claims: (1) that the Ordinances are preempted by Colo. Rev. Stat. § 38-12-301, which prohibits rent control ("Claim I"); (2) that Ordinance 29 violates substantive due process rights it is irrational, arbitrary, and capricious or is not in furtherance of its stated purpose ("Claim II"); (3) that Ordinance 28 violates substantive due process for the same reasons ("Claim III"); (4) that the Ordinances violate the equal protections clauses of the United States

4

Constitution and the Colorado Constitution ("Claim IV"); and (5) that the Ordinances violate the dormant Commerce Clause ("Claim V"). [*Id.* at ¶¶ 88–165].

Breckenridge then removed the case to this Court invoking 28 U.S.C. §§ 1331 and 1367 as a basis for jurisdiction. [Doc. 1]. Breckenridge now moves this Court to dismiss all Plaintiff's claims. [Doc. 11]. With respect to Claims II–V, Breckenridge seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. [*Id*. at 1]. Breckenridge then asks the Court to decline to exercise supplemental jurisdiction over Claim I, which is brought pursuant to state law. [*Id*. at 11]. With this factual and procedural background in mind, the Court turns to consideration of the standards that will govern its analysis in this matter.

## LEGAL STANDARDS

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claims "across

the line from conceivable to plausible."). A court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

The Court will address the issues in the order that they were briefed by the Parties, beginning with Claim IV.

### I. Equal Protection

"An equal protection violation occurs when the government treats someone differently than another who is similarly situated." *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996). The Equal Protection Clause does not guarantee nor suggest that the law may never draw distinctions between individuals, nor does it provide a safeguard against arbitrary or unlawful governmental action like the Due Process Clause; rather, it requires there be some rational reason for the distinctions. *SECSYS, LLC v. Vigil*, 666 F.3d 678, 684 (10th Cir. 2012).

To analyze an equal protection claim challenging legislative action, courts begin by determining the proper level of scrutiny to apply. When legislation categorizes persons based on suspect classifications, such as race and national origin, courts apply strict scrutiny. *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002) (citing *Okla. Educ. Ass'n v. Alcoholic Beverage Laws Comm'n*, 889 F.2d 929, 932 (10th Cir. 1989)). Even if the challenged legislation does not implicate suspect classifications, courts "will still apply strict scrutiny if the state's classification burdens the exercise of a fundamental right guaranteed by the U.S. Constitution." *Id*. (citing same). Where the

challenged legislation applies quasi-suspect classifications, such as sex and gender, courts apply intermediate scrutiny, under which the legislation must be "substantially related" to serving "important governmental objectives."  *Doe ex rel. Doe v. Rocky Mountain Classical Acad.*, 99 F.4th 1256, 1260 (10th Cir. 2024) (quotation omitted).  If none of these situations are present, the court applies a rational basis test.  *See Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995) ("When the plaintiff is not a member of a protected class and does not assert a fundamental right, we determine only whether government classifications have a rational basis.").  Under the rational basis test, a classification in legislation needs only to have a "rational relation to some legitimate end." *Kinnell v. Graves*, 265 F.3d 1125, 1128 (10th Cir. 2001) (quoting *White v. Colorado*, 157 F.3d 1226, 1234 (10th Cir. 1998)); *Mayo v. Nat'l Farmers Union Prop. & Cas. Co.*, 833 P.2d 54, 57 (Colo. 1992) (explaining that the same standards apply to equal protection challenges under the Colorado Constitution).

*Standard of Review.*  Breckenridge argues that the Court should apply rational basis review because Plaintiff does not allege that it is part of any protected class and no fundamental rights are burdened by the Ordinances.  [Doc. 11 at 5–6].  It asserts that property owners are not a suspect class and the right to dispose of property freely is not a fundamental right for equal protection purposes.  [*Id*. (citing *Abshire v. Newsom*, No. 2:21-cv-00198-JAM-KJN, 2021 WL 3418678, at *6 (E.D. Cal. Aug. 5, 2021), *aff'd*, 2023 WL 3243999 (9th Cir. May 4, 2023), and *211 Eighth, LLC v. Town of Carbondale*, 922 F. Supp. 2d 1174, 1180 (D. Colo. 2013))].  In turn, Breckenridge contends that Plaintiff does not sufficiently plead facts supporting a conclusion that the Ordinances are not related to a legitimate government purpose.  It asserts that Breckenridge's Ordinances and "their

7

accompanying restrictions are rationally related to the legitimate goals of preserving neighborhood life and local housing." [*Id*. at 9].

Plaintiff responds that "the correct standard for review for its constitutional claims is intermediate scrutiny." [Doc. 21 at 1]. It asserts that the Ordinances implicate an important right[3] in real property and apply unequally to owners of real property in Breckenridge. [*Id*. at 5]. Nonetheless, Plaintiff argues that the Ordinances fail under the rational basis test because they discriminate amongst its members, some who can rent their homes as STRs and others who cannot, based on arbitrary zone designations. [*Id*. at 8–9]. Plaintiff also asserts that the Ordinances were enacted for an illegitimate purpose of rent control, which is prohibited by state statute as alleged in its first claim. [*Id*. at 9–10].[4]

---

[3] Plaintiff cites out-of-circuit caselaw for the proposition that intermediate scrutiny also applies to legislation that "implicates an important right." [Doc. 21 at 4–5 (citing *United States v. Coleman*, 166 F. 3d 428, 431 (2d Cir. 1999))]. First, this Court is not bound by out-of-circuit law. *See United States v. Rhodes*, 834 F. App'x 457, 462 (10th Cir. 2020) ("[D]istrict courts in this circuit are bound by [Tenth Circuit] decisions and those of the United States Supreme Court."). Second, the well-pleaded allegations in the Complaint do not suggest that limitations on use of real property for STRs implicates an "important right" as that term is used in such caselaw. *Compare Plyler v. Doe*, 457 U.S. 202, 221 (1982) (discussing the importance of public education to minor children).

[4] Plaintiff's Response also refers repeatedly to Colorado's Unfair Practices Act, Colo. Rev. Stat. § 6-2-103(1). [Doc. 21 at 6–7, 9]. No reference is made to this statute in Plaintiff's Complaint, and it is unclear how the statute is relevant to the claims presented by Plaintiff. *See* [Doc. 5]. And, with limited exceptions, the Court's evaluation is limited to the pleadings. *See Casanova*, *In re Qwest Commc'ns Int'l., Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) ("The plaintiff[] may not effectively amend [its] Complaint by alleging new facts in [its] response to a motion to dismiss."). Regardless, there does not appear to be a viable legal theory under the Unfair Practices Act because it applies to businesses "engaged in the production, manufacture, distribution, or sale of any commodity, product, or service of general use or consumption" and no related allegations are present in the Complaint. Colo. Rev. Stat. § 6-2-103(1).

The Court finds that the rational basis test is the appropriate level of scrutiny to apply. *Cf. Ruelle v. Summit Cnty. Bd. of Cnty. Comm'rs*, No. 23-cv-02057-GPG-SBP, ECF No. 45 at 9 (D. Colo. June 25, 2024). Plaintiff's allegations do not show that the Ordinances use suspect or quasi-suspect classifications. Plaintiff's allegations refer to the distinctions between the four geographic zones established by Ordinance 28, which all exist within Breckenridge's town limits. [Doc. 5 at ¶¶ 147–55]. Such distinctions do not raise the specter of discrimination subject to heightened scrutiny in this case.[5] Likewise, Plaintiff's allegations do not show that the Ordinances implicate fundamental rights subject to heightened scrutiny. *See 211 Eighth, LLC*, 922 F. Supp. 2d at 1180 ("federal courts have concluded uniformly that the right to dispose of one's property is not fundamental for equal protection purposes in circumstances similar to those presented in this case") (collecting cases); *Lehman v. City of Louisville*, 967 F.2d 1474, 1476 n.2 (10th Cir. 1992) (finding that the alleged right to use property for commercial and residential purposes bore "'little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution.'" (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 230 (1985) (Powell, J., concurring))); *W. Income Props., Inc. v. City & Cnty. of Denver*, 485 P.2d 120, 121 (Colo. 1971) ("The use to which an owner may put his property is subject to a proper exercise of the police power.").

***Application.*** Under rational basis review, "when legislative judgment is called into question on equal protection grounds and the issue is debatable, the decision of the

---

[5] There are, for example, no allegations that the geographic distinctions are the result of past racial discrimination, such as redlining, or that the zones otherwise differ in their racial, sexual, or national origin characteristics. *See NAACP v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 290 (7th Cir. 1992) (discussing redlining).

legislature must be upheld if 'any state of facts either known or which could reasonably be assumed affords support for it.'" *Powers v. Harris*, 379 F.3d 1208, 1216–17 (10th Cir. 2004) (quoting *United States v. Carolene Prods. Co.*, 304 U.S. 144, 154 (1938)). "Second-guessing by a court is not allowed." *Id*. (citing same). A court "will not strike down a law as irrational simply because it may not succeed in bringing about the result it seeks to accomplish" or because some other regulatory scheme would have been more effective. *Id*. (citations omitted).

When subjected to such review, Plaintiff's fourth claim fails as a matter of law. Plaintiff's allegations call into question the Town Council's legislative process and whether the Ordinances will be effective in achieving their purposes. *See, e.g.*, [Doc. 5 at ¶ 70 ("At no time during the period that the Task Force met were they asked to analyze data or determine the number of STR units needed to be converted in order to accommodate local employee housing needs."); *id.* at ¶ 87 ("Ordinance 28 did not address the issues raised by the Task Force or Town staff.")]. Plaintiff also persuasively argues that the Town Council's stated intention of preserving "town character" is arbitrary because it is unclear what this refers to or how it could be related to the legislated restrictions. [Doc. 21 at 9 ("But these policy statements, especially a change in the character of the Town, do not logically support disparate treatment of homeowners within the Town.")]. Nonetheless, even assuming that Plaintiff is correct on all these points and reading the non-conclusory allegations in its favor, it cannot prevail because Plaintiff allegations do not show that no plausible basis supports the Ordinances.

On rational-basis review, a statutory classification such as the one at issue comes before the Court bearing a "strong presumption of validity, and those attacking its

rationality have the burden to negate every conceivable basis that might support it." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314–15 (1993). Thus, the Court must "consider every plausible legitimate state interest that might support" the Ordinances. *Powers*, 379 F.3d at 1218. The Court, however, does not need to look beyond the reasons stated in Ordinance 29 for a basis that plausibly supports the Ordinances. The Town Council stated that it adopted the regulatory scheme, in part, to mitigate "negative impacts" it found related to STRs, including "loud and excessive noise, improper parking, and trash that is not disposed of properly." [Doc. 11-1 at 2, § Q.4]; *see also* [Doc. 5 at ¶ 47 ("Problems with the Operations of Some Accommodations Units")].

The limitations on STRs in the Ordinances are at least rationally related to controlling associated noise, parking, and waste disposal. *See Heller v. Doe ex rel. Doe*, 509 U.S. 312, 324 (1993) ("A statutory classification fails rational-basis review only when it rests on grounds wholly irrelevant to the achievement of the State's objective." (quotation omitted)). For example, it is rational to suggest that limiting STRs in number and location will serve to mitigate associated noise and parking issues. This is a legitimate government purpose. *Ferguson v. Skrupa*, 372 U.S. 726, 730–31 (1963) ("States 'have power to legislate against what are found to be injurious practices in their internal commercial and business affairs, so long as their laws do not run afoul of some specific federal constitutional prohibition, or of some valid federal law.'" (quoting *Lincoln Fed. Labor Union v. Nw. Iron & Metal Co.*, 335 U.S. 525, 536 (1949))); *People v. Zinn*, 843 P.2d 1351, 1354 (Colo. 1993) ("The legislature has broad discretion to enact measures for the protection of the public health, safety and welfare"). Even if, as Plaintiff asserts, the Ordinances will be ineffective or the Town Council unreliable methods to

11

determine the STR zones, such considerations cannot affect the Court's analysis. *Powers*, 379 F.3d at 1217 ("[W]e will not strike down a law as irrational simply because it may not succeed in bringing about the result it seeks to accomplish, or because the statute's classifications lack razor-sharp precision." (citations omitted)).  Likewise, the allegations that the Town Council ignored or did not seek out empirical evidence are not relevant to rational basis review.  *Id*. ("Nor can we overturn a statute on the basis that no empirical evidence supports the assumptions underlying the legislative choice." (citation omitted)).  Breckenridge's desire to limit perceived ill effects of STRs is a legitimate purpose and the Ordinances are rationally related to this end.  Accordingly, the ordinances pass rational basis review and the Court respectfully **DISMISSES** Claim IV.

## II.     Substantive Due Process

The Fourteenth Amendment's due process clause and the corresponding clause in the Colorado Constitution "provide[] heightened protection against government interference with certain fundamental rights and liberty interests."  *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citing *Reno v. Flores*, 507 U.S. 292, 301–302 (1993)); *see also Ferguson v. People*, 824 P.2d 803, 807 (Colo. 1992).  Unlike the equal protection clause, the due process clause applies "even when the challenged regulation affects all persons equally."  *Powers*, 379 F.3d at 1215 (citing *Glucksberg*, 521 U.S. at 720).  The substantive due process standards under the United States and Colorado Constitutions are identical.  *People v. Smith*, 848 P.2d 365, 368–69 (Colo. 1993).

"[A] substantive due process analysis proceeds along the same lines as an equal protection analysis."  *Powers*, 379 F.3d at 1215.  "Absent the presence of a fundamental constitutional right, legislation that bears a rational relationship to a legitimate

12

governmental interest will survive challenges based on the substantive due process clauses of the United States and Colorado Constitutions." *Zinn*, 843 P.2d at 1353; *see also Allright Colo., Inc. v. City and Cnty. of Denver*, 937 F.2d 1502, 1511–1512 (10th Cir. 1991).

Plaintiff acknowledges that, apart from the discrimination analysis, the same standards apply to its substantive due process claims and equal protection claim.  [Doc. 21 at 4–5, 10–11].  Plaintiff does not separately argue its substantive due process claims, apart from asserting that the Court should overturn the Ordinances under substantive due process even if it does not find the disparate treatment required for its equal protection claim.  [*Id*. at 11].  As discussed above, the Court finds that the Ordinances bear a rational relationship to a legitimate government interest and, therefore, must be upheld on rational basis review.  Accordingly, the Court respectfully **DISMISSES** Claims II and III.

### III.     Dormant Commerce Clause

The Supreme Court "has interpreted the Commerce Clause to limit state regulation of interstate commerce by applying the negative implications of the Commerce Clause." *Direct Mktg. Ass'n v. Brohl*, 814 F.3d 1129, 1135 (10th Cir. 2016) (citing *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 535 (1949)).  Under this doctrine, known as the dormant Commerce Clause, the Commerce Clause acts as "both an express grant of power to Congress and an implicit limit on the power of state and local government" to regulate interstate commerce.  *Id*.  Two principles guide the Courts in adjudicating whether legislation oversteps the boundaries of the states' authority to regulate interstate commerce:  "First, state regulations may not discriminate against interstate commerce; and second, States may not impose undue burdens on interstate commerce."  *South*

13

*Dakota v. Wayfair, Inc.*, 585 U.S. 162, 173 (2018).  When applying the first principle, "[s]tate laws that discriminate against interstate commerce face 'a virtually *per se* rule of invalidity.'"  *Id*. (quoting *Granholm v. Heald*, 544 U.S. 460, 476 (2005)).  In considering whether legislation violates the dormant Commerce Clause, the "primary concern is economic protectionism."  *Brohl*, 814 F.3d at 1135 (citing *W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 192 (1994)).  Even where legislation does not explicitly discriminate, it may be found discriminatory by causing disparate impact when it causes "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."  *Or. Waste Sys., Inc. v. Dep't of Env't Quality*, 511 U.S. 93, 99 (1994).  For example, legislation is discriminatory when it imposes costs on out-of-staters that in-state residents would not have to bear.  *See, e.g.*, *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 350–51 (1977).  If legislation is not discriminatory, it "will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."  *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

Plaintiff alleges the Ordinances discriminate "on their face, purpose, and in their effect."  [Doc. 5 at ¶ 163].  It does not, however, identify any terms on the face of the Ordinance that apply differently to in-state and out-of-state interests.  Plaintiff alleges that the "purpose of the Ordinances is to benefit Colorado residents by decreasing the cost of their rental housing to the detriment of out-of-state visitors."  [*Id.* at ¶ 160].  The Ordinances' "intended effect is to lower the average long-term rental rate, but [the Ordinances] would also have the effect of increasing the average short-term rental rate."  [*Id*. at ¶ 162].  In Plaintiff's view, the Ordinances have a discriminatory effect because

14

"STRs are very commonly rented by out-of-state visitors" while "[l]ong-term rentals are primarily rented by Colorado residents." [*Id*. at ¶¶ 158–59].

Breckenridge argues that the Ordinances are non-discriminatory because the "caps for STRs apply equally to Colorado and non-Colorado" property owners. [Doc. 11 at 13]. Breckenridge does not address the allegations regarding in-state and out-of-state renters other than asserting that such allegations are "conclusory." [*Id*.]. In response, Plaintiff analogizes this case to *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564 (1997) ("*Camps*"). [Doc. 21 at 12–13]. The statute at issue in *Camps* imposed higher taxes on charitable organizations that primarily served out-of-state individuals than on those that primarily served in-state residents. *Camps*, 520 U.S. at 570. The Supreme Court found the scheme was facially discriminatory in explicitly differentiating between entities that served in-state and out-of-state interests. *Id*. at 581. It held the statute violated the dormant Commerce Clause even though the "discriminatory burden is imposed on the out-of-state customer indirectly by means of a tax on the entity transacting business with the non-Maine customer" rather than directly regulating interstate commerce. *Id*. at 580. Plaintiff argues that Ordinances discriminate in like fashion because the "explicit economic objective of the Ordinances is to benefit the local instate workforce with lower rent at the expense of STR property owners and their out-of-state guests." [Doc. 21 at 12]. The Court respectfully disagrees.

Plaintiff bears the initial burden of showing discrimination. *Brohl*, 814 F.3d at 1140. Neither Plaintiff's allegations nor its arguments identify any provision of the Ordinances that explicitly differentiates between in-state and out-of-state interests. On their face, the Ordinances are facially neutral and regulate only property within the town limits of

Breckenridge, Colorado. [*See* Doc. 11-1 and 11-2]. They do not differentiate between in-state and out-of-state property owners or renters. [*Id*.]. The Ordinances apply in the same manner to persons nationwide, regardless of whether they are in-state or out-of-state. Thus, there is no facial discrimination as in *Camps*.

Plaintiff's allegations likewise do not plausibly suggest that the Ordinances cause a disparate impact or excessive burden on interstate commerce. The Ordinances do not directly impose costs, but Plaintiff alleges that they would have the incidental effect of increasing STR rental rates and, in line with their purpose, reducing long-term rental rates. To the extent that the Ordinances will have the incidental effect of increasing STR costs, those increased costs are borne by Coloradans and others alike. Likewise, to the extent that long-term rental costs are reduced, those reduced costs are available to anyone. At most, Plaintiff alleges that more long-term rentals go to Colorado residents than to others, which suggests that Colorado residents would receive more benefits from the Ordinances. It is unclear whether such a purely intrastate effect is subject to dormant Commerce Clause scrutiny. *See Pike*, 397 U.S. at 142 (balancing only a law's "effects on interstate commerce"). Regardless, such an effect is insufficient to find the Ordinances discriminatory. *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 88 (1987) (rejecting the contention that a "statute is discriminatory because it will apply most often to out-of-state entities"). The Supreme Court has explicitly rejected the assertion that a law was discriminatory when its burden was distributed by the amount "consumed and not according to any distinction between in-state and out-of-state consumers." *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 619 (1981). Plaintiff does not make any allegations or arguments that the Ordinances excessively burden interstate

commerce. Therefore, because the Ordinances are not discriminatory, Plaintiff cannot show that they violate the dormant Commerce Clause. *Pike*, 397 U.S. at 142. Accordingly, the Court respectfully **DISMISSES** Count V.

## IV.   Remaining State Law Claim

Breckenridge asks the Court to dismiss the remaining claim without prejudice should it dismiss all claims subject to federal question jurisdiction. [Doc. 11 at 14]. Plaintiff argues that such a dismissal would be "premature," but does not assert that there is a reason for the Court to retain jurisdiction over the state law claim in the absence of the others. [Doc. 21 at 14].

After the dismissal of Plaintiff's second through fifth claims, there is no basis for federal-question jurisdiction in this case; "[u]nder those circumstances, 28 U.S.C. § 1367(c)(3) expressly permits a district court to decline to exercise supplemental jurisdiction over any remaining state-law claims." *Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008). In the interest of judicial economy and fairness, and to promote the notions of comity and federalism, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claim and, rather dismissing the remaining claim, will sua sponte **REMAND** that claim to the District Court for Summit County, Colorado.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1)   Defendant Town of Breckenridge, Colorado's Motion to Dismiss [Doc. 11] is **GRANTED** in part and **DENIED** in part;

(2)   Plaintiff's Claims II through V are **DISMISSED**;

17

(3) This case is **REMANDED** to the District Court for Summit County, Colorado pursuant to 28 U.S.C. § 1367(c)(3); and

(4) The Clerk of Court is directed to **TRANSMIT** this case to the appropriate state authority and **TERMINATE** this case.

DATED: July 9, 2024

BY THE COURT:

_____
Nina Y. Wang
United States District Judge